Law Offices of Tracy T. Woo
Tracy T. Woo, (SBN 310384)
777 E. Tahquitz Canyon Way,
Suite 200-138
Palm Springs, CA 92262
Telephone: (760) 851-0901
Email: Tracywoolaw@icloud.com

Attorney for Plaintiff Amy Cox

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY COX, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>LB LENDING, LLC, a Nevada limited liability company; and MACOY CAPITAL PARTNERS, INC., a California corporation.<br><br>　　　　Defendants. | Case No.  5:17-CV-001580<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1.　RESCISSION, DAMAGES, CIVIL PENALTIES AND ATTORNEYS FEES UNDER TRUTH-IN-LENDING ACT<br><br>2.　INJUNCTION, RESTITUTION AND OTHER RELIEF UNDER CALIFORNIA UNFAIR PRACTICES ACT, BUSINESS AND PROFESSIONS CODE SECTION<br><br>3.　FRAUD<br><br>4.　BREACH OF FIDUCIARY DUTY<br><br>5.　NEGLIGENCE<br><br>6.　SLANDER OF TITLE<br><br>DEMAND FOR JURY TRIAL |

1

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 1640(e) (TILA jurisdiction). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) (supplemental jurisdiction), in that the state law claims are based on the same conduct as the federal claims and are so related that they form part of the same case or controversy.

## VENUE AND INTRA-DISTRICT ASSIGNMENT

2. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the U.S. District Court for the Central District of California because Plaintiff entered into the mortgage loans that are the subject of this lawsuit in Riverside County, California, and the events or omissions giving rise to Plaintiff's claims occurred in Riverside County, California.

## PARTIES

3. Plaintiff, AMY COX is a natural person residing in Palm Springs, California, ("Plaintiff"). Plaintiff's principal place of residence is 319 Westlake Terrace, Palm Springs, CA 92264 (the "Residence").

4. Defendant LB LENDING, LLC is a Nevada limited liability company doing business in the County of Riverside, California, ("Defendant LB Lending").

5. Defendant Macoy Capital Partners, Inc. is a California corporation doing business in the County of Riverside, California, ("Defendant Macoy Capital");

6. Plaintiff is informed and believes and upon such information and belief alleges that Defendant Macoy Capital Partners was the agent, servants, and/or co-conspirators of Defendant LB Lending, and was acting within the course and scope of said agency and/or conspiracy.

7. At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and are the entities to whom the transactions which are the subject of this action are initially payable, making

1  Defendants each a "creditor" within the meaning of and subject to compliance with the

2  Truth In Lending Act ("TILA"), 15 U.S.C. § 1602(f) and Regulation Z § 1026.2(a)(17).

3

4                                    GENERAL FACTUAL ALLEGATIONS

5          8. On or before February 2011, Plaintiff was approached by Defendant Macoy

6  Capital to extend Plaintiff's then existing loan with Jerome M. Covin, Trustee of the

7  Covin Family Trust (the "Covin Loan").

8          9. The Covin Loan was set to expire on May 31, 2011, but Defendant Macoy

9  Capital orchestrated an extension to May 31, 2013.

10         10. Before the Covin Loan was to mature on May 31, 2013, Plaintiff requested

11  that Defendant Macoy Capital look into refinancing the Covin loan with a traditional

12  home loan. Specifically, in or around July 30, 2012, Plaintiff requested that Defendant

13  Macoy Capital try to refinance her Residence with a 30-year fixed term and at a lower

14  rate.

15         11. Defendant Macoy Capital ignored the request and instead arranged for a

16  one-year loan with Defendant LB Lending (fka Lincoln Berger), effective on or about

17  August 2012 ("Loan 1"). Loan 1 closed on or about October 5, 2012. Defendants sent

18  to Plaintiff the Loan 1 documents only two days before the October 5, 2012 closing

19  date. Prior to closing Loan 1 with LB Lending, Plaintiff requested a 24-month term, but

20  that did not happen as Plaintiff was told she would simply have to refinance Loan 1 in

21  12 months.

22         12. In essence, on or around October 2012, Plaintiff obtained from Defendants,

23  as "creditors," a consumer loan in the amount of $180,000.00 secured by a deed of

24  trust on the Residence (i.e., Loan 1).

25         13. Defendants knew or should have known that the purpose of the Loan was to

26  refinance the Covin Loan and for other personal, family or household purposes, and the

27  proceeds were used as such.

28

14. Defendants never asked Plaintiff if Loan 1 was for a business purpose, never requested or received any information concerning any business purpose that the loan proceeds might be used for, and never received any statement from Plaintiff describing a business purpose of the proceeds.

15. Defendants knew or should have known that all of the proceeds were going to be used, and were in fact used, by Plaintiff in connection with Plaintiff's primary residence and other personal and living expenses.

16. In early to mid-August 2013, and prior to Loan 1 maturing on August 31, 2013, Defendant Macoy Capital orchestrated an extension of Loan 1's maturity date of August 31, 2013 to August 31, 2015. The extension did not occur until well after the August 31, 2013 maturity date. Prior to closing on the Loan 1 extension, Plaintiff requested in September 2013 if she could get a "traditional loan" (i.e., a 30-year loan with a lower interest rate). Defendant Macoy Capital ignored the Plaintiff's request for a traditional loan.

17. Defendants did not give Plaintiff the extension documents until well after the initial maturity date of August 31, 2013 for Loan 1. Defendants thus backdated all documents related to the extension of Loan 1. That is, Defendants did not provide Plaintiff with the loan extension documents until sometime on or about September 24, 2013, and Defendant Macoy Capital directed Plaintiff to sign them immediately and return via overnight mail. Defendants knew or should have known that since the initial maturity date of August 31, 2013 had passed, that Plaintiff had limited options but to sign the extension. Loan 1 was thus amended to extend the maturity date of Loan 1 from August 31, 2013 to August 31, 2015.

18. During the entire process of Loan 1, including the amendment thereto, Defendants provided Plaintiff with several loan documents, including: (i) a Promissory Note for $180,000.00, (ii) an Occupancy Affidavit And Financial Status; and (iii) a Deed of Trust With Assignment of Rents, Security Agreements And Fixture Filings, (the "2013 Deed of Trust").

1       19. The 2013 Deed of Trust would be used to secure Loan 1 with Plaintiff's

2   property, where Plaintiff lives as her principal residence. Plaintiff made clear and

3   Defendants knew or should have known that Plaintiff's property used to secure Loan 1

4   was her principal residence.

5       20. The terms of Loan 1 for a principal amount of $180,000.00 was initially for

6   a term of 12 months (maturing in August 2013) at an annual interest rate of 8.5%, but

7   the term was later extended for another 24 months (maturing in August 2015) at the

8   same annual interest rate of 8.5%. Thus, Loan 1 provided that Plaintiff make monthly

9   interest-only payments of $1,275.00, and that a balloon payment of the principal

10  balance would be due at the maturity date.

11      21. Defendants did not ascertain Plaintiff's eligibility for or ability to repay Loan

12  1. Defendants did not ask Defendant for, nor did Defendants receive, any financial or

13  employment information.

14      22. Plaintiff was not provided any documents in anticipation of executing the

15  documents for Loan 1. They were all given to her for immediate execution with closing

16  to take place within two days. After executing the Loan documents, Plaintiff was not

17  provided any documents nor mandatory disclosures for Loan 1.

18      23. In fact, the day prior to the date for signing the loan documents was when

19  Plaintiff learned for the first time in an email from Defendant Macoy Capital that the

20  interest rate for the loan would be 8.5%, despite Plaintiff's prior repeated requests for

21  a traditional home loan (longer term with lower interest rate). Only 2 days before

22  signing the loan documents did Plaintiff learn that the terms of Loan 1 included the

23  obligation to pay from the proceeds of the Loan the following: a 1% cash point for an

24  origination fee to Defendant I.B Lending of $1,800.00; a 2% cash point for a broker fee

25  of $3,600.00 to Defendant Macoy Capital; cash to Defendant Macoy Capital for cost of

26  so-called Disclosure/Docs of $650.00; cash for Prepaid Interest of $167.67; cash for

27  title, taxes and recording charge of $561.00; cash for escrow charges of $610.00; and a

28  balloon payment for the full loan amount that would be due on August 30, 2015. The

Loan also provided a default rate of 17.99%. When taking into consideration all of the above, the Loan is more than 6.5 points above the federal Average Prime Rate Offer, and was thus a "high cost" or HOEPA loan governed by 15 C.F.R. § 1026.35 of Regulation Z.

24. Well after closing on Loan 1 and upon review of the Note evidencing the Loan 1, Plaintiff learned:

(a) The Note provided for an increase in the interest rate by 5% by way of a service fee for any payment late by more than ten (10) calendar days;

(b) The Note further provided for an increase in the interest rate by 2% by way of a service fee if the unpaid principal balance due at the maturity date is late; and

(c) The Note further provided for an increase in the interest rate to at least 17.99% upon the occurrence of an event of default;

25. Defendants knew that Loan 1 was about to mature in August 2015, and prior to then, Defendant Macoy Capital informed Plaintiff that Defendant LB Lending would refinance its Loan 1 with a new loan.

26. On or about June 10, 2015, Plaintiff obtained from Defendant LB Lending and Defendant Macoy Capital (collectively, "Defendants), as "creditors", another consumer loan in the amount of $270,000.00, secured by a deed of trust on the Residence ("Loan 2").

27. Defendants knew or should have known that the purpose of the Loan was to refinance Loan 1 and for other personal, family or household purposes, and the proceeds were used as such.

28. Defendants never asked Plaintiff if Loan 2 was for a business purpose, never requested or received any information concerning any business purpose that the loan proceeds might be used for, and never received any statement from Plaintiff describing a business purpose of the proceeds.

29. Defendants knew or should have known that all of the proceeds were going to be used, and were in fact used, by Plaintiff in connection with Plaintiff's primary residence and other personal and living expenses.

30. At or around closing of Loan 2, Plaintiff noticed in glancing through the loan documents that there was language that said Loan 2 was for a business purpose. Plaintiff immediately informed Defendants that she did not understand that language because Loan 2 was not for a business purpose, that that the proceeds would be used to refinance the Loan 1, and the net proceeds to her would be used for personal, family and/or household purposes.  Defendants responded along the lines with "don't worry about it; it's just language that we have to use".

31. Relying upon Defendants' response, Plaintiff signed the Loan 2 documentation.

32. During the process of Loan 2, Defendants provided Plaintiff with several loan documents around two days before closing, including: (i) a Promissory Note for $270,000.00, dated June 9, 2015, (ii) an Occupancy Affidavit and Financial Status, and (iii) a Deed of Trust With Assignment of Rents, Security Agreements And Fixture Filings, dated June 9, 2015 (the "2015 Deed of Trust").

33. On or about August 26, 2015, well after closing on Loan 2 in June 2015, Defendants then provided Plaintiff, for the first time, a Borrower's Agreement to sign. The Borrower's Agreement included language that Loan 2 was for an investment purpose.  When Plaintiff asked about this, Defendants response was as before in that Plaintiff should "not worry about it." Relying on Defendants response, Plaintiff signed and returned to Defendants the Borrower Agreement on or about September 13, 2015.

34. Moreover, all the areas in the forms that referenced the stated purpose of the business or investment were left blank. Defendants intentionally did not pursue this information as they knew or should have known that the purpose of the Loans 1 and 2 were for personal, family, or household purposes.

35. The 2015 Deed of Trust would be used to secure Loan 2 with Plaintiff's Residence, where Plaintiff lives as her principal place of dwelling.

36. The loan proceeds of Loan 2 would pay off Loan 1 and thus the 2013 Deed of Trust would be released and replaced by the 2015 Deed of Trust.

37. Effectively, at the closing of Loan 2, the only deed of trust on Plaintiff's residence was the 2015 Deed of Trust.

38. The terms of Loan 2 were for a principal amount of $270,000.00, and payable within 24 months at an annual interest rate of 8.5%. Thus, Loan 2 provided that Plaintiff make monthly interest-only payments of $1,912.50, and that a balloon payment of the principal balance would be due at the maturity date. Loan 2 also provides a default rate of 17.00%. When taking into consideration all of the above, the annual percentage rate was more than 6.5 points higher than the federal Average Prime Rate Offer and was thus a "high cost" or HOEPA loan under Regulation Z.

39. Defendants did not ascertain Plaintiff's eligibility for or ability to repay Loan 2. Defendants did not ask Plaintiff for, nor did Defendants receive, any financial or employment information, even though Plaintiff informed Defendants that she was unemployed and was looking for employment.

40. Plaintiff was not provided any documents in anticipation of executing the documents for Loan 2. They were all given to her for immediate execution with closing to take place within a day or two. After executing the Loan documents, Plaintiff was not provided any documents nor mandatory disclosures for Loan 2.

41. Only at closing did Plaintiff learn that the terms of Loan 2 included the obligation to pay from the proceeds of the Loan the following: a 1% cash point for an origination fee to Defendant LB Lending of $2,700.00; a 2% cash point for a broker fee of $5,400.00 to Defendant Macoy Capital; cash for processing fee of $350.00 to Defendant Macoy Capital; cash for attorneys' fees and cost for Defendant Macoy Capital's attorneys of $1,500.00; cash for Prepaid Interest of $1,275.00; cash for title, taxes and recording charge of $945.00; cash for escrow charges of $935.00; interest on the entire principal at the rate of 8.5% per annum with a balloon payment due on June 8, 2017, 2015.

42.   After closing on Loan 2 and upon review of the Note evidencing the Loan, Plaintiff learned:

(a)   The Note provided for an increase in the interest rate by 5% by way of a service fee for any payment late by more than ten (10) calendar days;

(b)   The Note further provided for an increase in the interest rate by 2% by way of a service fee if the unpaid principal balance due at the maturity date is late; and

(c)   The Note further provided for an increase in the interest rate to at least 17% upon the occurrence of an event of default;

43.   Under both Loans 1 and 2, it is possible that the borrower would have an interest rate of up to 17% plus pay fees and penalties of another 7% at any time during the term on of the Loan.

44.   The scheme that Defendants put into action was to create sham business loans in an effort to avoid consumer protection laws such as TILA, Regulation Z, and other applicable laws.  Defendants knew or should have known that: (a) the Plaintiff's Residence, which was the property used to secure Loans 1 and 2 (collectively, the "Loans") by LB Lending to Plaintiff; (b) that the Loans were for consumer purposes and not for business/investment purposes; and (c) Plaintiff was unemployed at the time of Loan 2, and had effectively no income at the time of Loan 1.

45.   Defendants intentionally and/or negligently cloaked the Loans as business loans when in fact these were consumer loans secured by Plaintiff's Residence. Defendants intentionally and/or negligently did so to avoid giving the proper disclosures and affording Plaintiff the proper protections under TILA, Regulation Z, and other applicable laws.

46.  Defendants' scheme to cloak consumer loans as business loans began when Defendants knew or should have known that Plaintiff desperately needed to refinance the Covin Loan and then Loan 1 with Defendant LB Lending as Plaintiff did not have the financial means to pay off any of those loans upon their respective maturity.

47.  Defendants placed Plaintiff in a spiral of perpetual short-term high-interest loans that eroded Plaintiff's equity of her Residence.

48. Defendants waited till the very last minute to give Plaintiff the loan documents and even had Plaintiff back-date documents, and would then demand that Plaintiff immediately sign and return the documents.  Defendants' pressure tactics were to take advantage of Plaintiff's dire situation of losing her home.

49.  Defendants knew or should have known that (a) giving the loan documents to Plaintiff only one or two days before the closing and instructing Plaintiff to sign them immediately, and (b) giving loan documents to Plaintiff after Loan 2 closed and instructing Plaintiff to sign them immediately would not allow Plaintiff time to hire an attorney to review the loan documents.

50. On or about June 7, 2017, Defendants' attorney sent a demand letter to Plaintiff saying the Plaintiff is in default on the Note to Defendant LB Lending.

51.  On or about June 16, 2017, Plaintiff sent a notice of rescission under TILA to Defendants and expressed a willingness to repay Defendants the amount Plaintiff would owe as a result of rescission.  Within 20 days of the notice of rescission, Defendant LB Lending failed and continues to fail to release its security interest in Plaintiff's Residence as required under TILA or to otherwise cooperate in accomplishing the rescission.

## FIRST CLAIM

(For Violation of Federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq.)

52.  Plaintiff is a "consumer" within the meaning of Federal Reserve Regulation Z (hereinafter "Regulation Z," 12 C.F.R. § 1026.2(a)(1) with respect to the loan transactions described in this Complaint.

53. At all relevant times, Defendant LB Lending was a "creditor" within the meaning of Regulation Z, 12 C.F.R. § 1026.2(a)(17) and as defined in 15 U.S.C. § 1602(g) of the Truth-in-Lending Act ("TILA"), in that Defendant LB Lending: (1) regularly extended consumer credit in the form of mortgage loans that were payable in

1    more than four installments and for which the payment of a finance charge was

2    required; and (2) was the "person" to which those mortgage loans were initially

3    payable.

4       54. On or about May 8, 2009 and ever since then, Plaintiff had an "ownership

5    interest" (within the meaning of Regulation Z, 12 C.F.R. § 1026.23(a)) in the real

6    property located at 319 Westlake Terrace, Palm Springs, CA 92264 (the "Residence").

7    At all relevant times, the Residence was Plaintiff's "principal dwelling" within the

8    meaning of Regulation Z, 12 C.F.R. § 1026.23(a).

9       55. At all relevant times, Defendant LB Lending's agent, Defendant Macoy

10   Capital were "loan originators" as defined in 12 C.F.R. § 1026.36(a) of Regulation Z, in

11   that Defendant Macoy Capital, by and through its employees and/or agents, Mitch

12   Ohlbaum and David Rosenberg, were persons who, for compensation or other

13   monetary gain, or in expectation of compensation or other monetary gain, arranged,

14   negotiated, or otherwise obtained an extension of consumer credit for another person,

15   including Plaintiff.

16       56. The Loans originated by Defendant Macoy Capital on behalf of Plaintiff were

17   secured by a "dwelling" as defined by 15 U.S.C. §1602(w) of TILA, in that they were

18   residential structures or mobile homes that contained one to four family housing units

19   or individual units of condominiums or cooperatives.

20       57. Under the Truth-in-Lending Act, 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R.

21   § 1026.23, Defendants were required to provide Plaintiff with a prescribed form of

22   notice of Plaintiff's three-day right to cancel the Loans. Defendants failed to comply

23   with 15 U.S.C. § 1635.

24       58. Under the Truth-in-Lending Act, 15 U.S.C. § 1638 and Regulation Z, 12 C.F.R.

25   § 1026.18, Defendants were required to provide Plaintiff with a prescribed form of

26   notice and disclosure of the material terms of the Loans, including the annual

27   percentage rate, finance charge, amount financed, total of payments, payment

28   schedule, the security interest Defendants were retaining and other information. No

1    disclosures were provided, and thus Defendants failed to comply with 15 U.S.C. § 1638

2    and Regulation Z, 12 C.F.R. § 1026.18.

3        59.  Regulation Z required the Defendants, and each of them to consider,

4    document and verify Plaintiff's ability to repay the Loans, none of which Defendants

5    even started to do.  12 C.F.R. §1026.43(c)(5).  As mentioned above, Plaintiff was

6    unemployed at the time of Loan 2, and had effectively no income at the time of Loan 1.

7        60.  In calculating a borrower's ability to repay a loan such as Loan 1 and Loan

8    2, a creditor is required by Regulation Z to assume that the borrower's monthly

9    payments are equal to any balloon payment.  Special rules apply for loans with a

10   balloon payment, interest-only loans, and negative amortization loans.  A creditor must

11   make the consideration required under paragraph (c)(2)(iii) of this section for: (A) a

12   loan with a balloon payment, as defined in § 1026.18(s)(5)(i), using: (1) The maximum

13   payment scheduled during the first five years after the date on which the first regular

14   periodic payment will be due for a loan that is not a higher-priced covered transaction;

15   or (2) The maximum payment in the payment schedule, including any balloon

16   payment, for a higher-priced covered transaction.

17       61.  The Loans were "high cost" loans that were arranged through the services

18   of Defendant Macoy Capital, a mortgage broker. Under 12 C.F.R. § 1026.35, a "high-cost

19   loan" is defined as any consumer home loan where the annual percentage rate ("APR")

20   exceeds 6.5 percentage points over the average prime rate offer index in a case of a

21   first lien transaction. Here, the Loans had an effective APR at or above 10.5%, which is

22   more than 6.5 percentage points over the average prime rate offer index that ranged

23   from 3.04 to 3.24% over all relevant times.

24       62.  Because the Loans were high cost, Regulation Z's Home Owner Equity

25   Protection Act provisions ("HOEPA") required additional disclosures at least three

26   days before consummation of the transaction. (15 U.S.C. § 1639(b)(1).) Substantively,

27   HOEPA generally precludes any prepayment penalty provision in the loan (15 U.S.C. §

28   1639(c)), prohibits increases in the interest rate charged following any default (*id.*, §

1639(d)), and bars negative amortization (*id.*, § 1639(f)) and more than 2 prepaid monthly payments (*id.*, § 1639(g)). Most importantly, HOEPA requires that a lender consider a borrower's ability to repay a loan. Any failure of the creditor to comply with the requirements of HOEPA is treated as a failure to deliver material disclosures, thereby triggering the debtor's right to rescind. (15 U.S.C. § 1639(j).) Defendants, and each of them failed to comply with any aspects of HOEPA.

63. Because the annual percentage rate exceeded 6.5 points over the Average Prime Rate Offer threshold under HOEPA amendments to TILA, codified at 15 U.S.C. § 1639, Defendants were required to provide Plaintiff with a prescribed form of notice and early waiting period before the Plaintiff became obligated under any loan contracts. No notice or waiting period was provided. In addition, because the loans were subject to HOEPA, Defendants were prohibited from inserting into the promissory notes any provision for a balloon payment and from making a loan without considering the ability of Plaintiff to repay the same. Defendants, however, did insert provisions for balloon payments under Loans 1 and 2. Defendants thus violated both aspects of HOEPA.

64. Because the balloon payment called for in the note in Loan 1 was $180,000.00, Plaintiff would have had to ascertain that Plaintiff had a monthly income sufficient to make a monthly mortgage payment of $180,000.00, which of course, Plaintiff did not even come close to having.

65. Similarly, because the balloon payment called for in the note in Loan 2 was $270,000.00, Plaintiff would have had to ascertain that Plaintiffs had a monthly income sufficient to make a monthly mortgage payment of $270,000.00, which of course, Plaintiff did not even come close to having.

66. As a result of the above violations of TILA, this complaint again serves as notice under 15 U.S.C. § 1635 that Plaintiff demands rescission of the Loan against Defendants, and each of them. By operation of law the 2015 Deed of Trust upon the

1 Property is now void and Defendants have a legal obligation to reflect that it has been
2 eliminated as a lien on Plaintiff's home.

3     67. As a result of the above violations of TILA, on June 16, 2017, Plaintiff served
4 on Defendants notice of Plaintiff's election to rescind Loan 2.  Defendants failed and
5 refused to comply with the rescission request or to perform their obligations under
6 TILA.

7     68. In contravention of their obligations under TILA to reconvey the 2015 Deed
8 of Trust, on August 2, 2017, Defendants recorded a Notice of Default And Election To
9 Sell Under Deed of Trust.

10     69. Plaintiff is entitled to the following relief by reason of the foregoing
11 violations of TILA by Defendants: (1) an order confirming that Plaintiff has validly
12 rescinded Loans 1 and 2 and has the right to repay the principal of the Loans with
13 credit for all finance charges and payments Plaintiff has made, (2) statutory damages
14 for violation of HOEPA equal to the sum of all finance charges in the Loan transactions,
15 (3) a civil penalty of $2,000 each for Defendants' wrongful refusal to recognize
16 Plaintiff's June 16, 2017 rescission demand, (4) civil penalties and damages for
17 violation of HOEPA and TILA's disclosure regime, and (5) statutory attorneys' fees at a
18 multiple to be determined by motion.

19                          SECOND CLAIM
20                      (Unfair Business Practices)

21     70. Plaintiff incorporates by this reference all earlier paragraphs.

22     71. Plaintiff alleges on information and belief that within four years past and
23 continuing until the present time Defendants engaged in and are engaging in business
24 practices which are unfair, deceptive, untrue and/or fraudulent within the meaning of
25 California Business and Professions Code Section 17200 et seq., in that Defendants
26 regularly violated TILA and HOEPA in the Loans transactions with consumers.

27     72. By reason of the foregoing unfair business practices Plaintiff seeks the
28 following relief:

1        (a) Temporary, preliminary and permanent injunctive relief restraining

2    Defendants' future violation of the complained of business practices;

3        (b) Restitution of interest, fees, finance charges and other amounts paid by

4    Plaintiff to Defendants during the last four years for Loan 1 and Loan 2; and,

5        (c) An order giving Plaintiff her rights under TILA and HOEPA by reason of the

6    violations of those sections by Defendants.

7    THIRD CLAIM

8    (Fraud)

9        73. Plaintiff incorporates by this reference all earlier paragraphs.

10       74. At all relevant times, Plaintiff's purpose for Loans 1 and 2 with Defendant

11   LB Lending was to refinance the prior loans, which were secured by her Residence, and

12   to provide additional income for personal, family, or household purposes.

13       75. At the time Loan 2 was made, Plaintiff was unemployed and the net

14   proceeds from Loan 2, after refinancing Loan 1, was so that Plaintiff could purchase

15   daily necessities such as food, clothing, transportation, and to pay ongoing utility and

16   HOA bills, make necessary home and car repairs, etc. Plaintiff informed Defendants of

17   such purpose for the Loans.

18       76. Plaintiff informed Defendants that she did not have, at all relevant times, a

19   business or commercial operation of any sorts, and did not understand language in the

20   documents that mentioned that the purpose of the loans was for business purposes

21   and not for personal, family, or household purposes. Whereupon, Mitch Ohlbaum and

22   David Rosenberg, the loan officers of Defendant Macoy Capital, who in turn were the

23   agents and representatives of Defendant LB Lending, repeatedly said, "not to worry

24   about it."

25       77. Defendants knew or should have known that the Loans were for personal,

26   family, or household purposes; knew or should have known that Plaintiff did not have

27   any business purpose for the Loans nor was Plaintiff contemplating starting any

28   business; knew or should have known that Plaintiff was unemployed at the time of

15

refinancing Loan 1 with Loan 2; knew or should have known that Plaintiff would rely on its statements that Plaintiff need not worry about the language regarding the Loans for a business purpose; knew or should have known that the Loans were sham business loans and were in reality consumer loans; and that Defendant Macoy Capital intended to create such sham business loans as a way to avoid all the consumer law protection for Plaintiff.

78. Defendant Macoy Capital made such false statements with the intent to induce Plaintiff to rely on them, so that it could receive fees and commission and that Defendant LB Lending would receive interest and balloon payments and fees.

79. Defendants also included a credit report with outdated information that showed Plaintiff living in Los Angeles, California at the time of Loan 1. That credit report was based on Plaintiff's prior home, which she sold in March 2009, well before any of the Loans were made.

80. Defendants knowingly concealed the fact that they had included false information about Plaintiff's purpose for the Loans, her employment status, her Residence, and Defendants falsified other related documents.

81. On August 2, 2017, Defendants falsely and wrongfully filed a Notice of Default And Election To Sell Under Deed Of Trust with the County of Riverside ("Notice of Default").

82. The Notice of Default is against Plaintiff and Plaintiff's residence.

83. The Notice of Default was wrongful because Plaintiff had validly exercised her rights to rescind the Loan under TILA in a letter dated June 16, 2017 and to offset all interest and finance charges paid to Defendants.

84. The Notice of Default of Default includes a false declaration that "California Civil Code Section 2923.5 or Section 2923.55 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property."

85. Defendants clearly knew or should have known that Loan 2, which is the loan in connection with the Notice of Default, is secured by a first deed of trust against Plaintiff's Residence.

86. The Deed of Trust securing Loan 2 says that it is a second lien. This is false given that the escrow documents show that the Loan 2 proceeds were used to pay off Loan 1, and that there are no other mortgages or deeds of trust on the Plaintiff's Residence.

87. Defendants' fraud is part of a scheme to strip the equity out of Plaintiff's Residence and to circumvent consumer protection laws, and to circumvent California foreclosure laws for a first lien on a residential property.

88. Defendants' fraud and/or scheme to defraud Plaintiff has caused damage to Plaintiff in that she would not have foregone any of the consumer protection laws afforded to her, including but not limited to her rights under TILA and Regulation Z that entitle her to rescind the Loans, obtain the Deed of Trust of her residence, and credit against the Loans' amounts all interest, fees and other costs she paid and/or incurred.

FOURTH CLAIM

(Breach of Fiduciary Duties)

89. Plaintiff incorporates by this reference all earlier paragraphs.

90. As the mortgage broker, Defendant Macoy Capital owes a fiduciary duty to Plaintiff, the borrower. In relevant part, California Bus. & Prof. Code § 10131, subdivision (d) defines a real estate broker as a person who, for compensation or expectation of compensation, "[s]olicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity." Defendant Macoy Capital by and through its employees and/or owners and/or agents, Mitch Ohlbaum and David Rosenberg, received compensation as part of Loans 1 and 2.

91. Defendant Macoy Capital breached its fiduciary duties to Plaintiff by failing to provide the proper disclosure under TILA and Regulation Z, as well as any and all other consumer law protections.

92. Defendant Macoy Capital further breached its fiduciary duties to Plaintiff by engaging in fraudulent conduct and/or being part of a scheme to defraud Plaintiff into entering into Loans 1 and 2 as sham business loans.

93. Defendant Macoy Capital's breach of its fiduciary duties to Plaintiff has caused damage to Plaintiff in that she would not have foregone any of the consumer protection laws afforded to her, including but not limited to her rights under TILA and Regulation Z that entitle her to rescind the Loans, obtain the 2015 Deed of Trust of her residence, and credit against the Loans' amounts all interest, fees and other costs she paid and/or incurred.

                              FIFTH CLAIM

                              (Negligence)

94. Plaintiff incorporates by this reference all earlier paragraphs.

95. Defendants owed a duty to Plaintiff by providing the proper loan disclosures under TILA and Regulation Z. Defendants breached that duty by and among: (i) failing to train and/or supervise Mitch Ohlbaum and David Rosenberg as its employees, partners, and/or agents to ensure that the proper loan documentation and disclosures for consumer loans were provided to Plaintiff; (ii) failing to have the necessary safeguards in place such as requiring that a business purpose be listed prior to closing on so-called business loans; (iii) failing to have the necessary safeguards in place to prevent its employees, partners, owners, and agents from procuring sham business loans and/or predatory consumer loans.

96. Defendants' negligence has caused damage to Plaintiff in that she would not have foregone any of the consumer protection laws afforded to her, including but not limited to her rights under TILA and Regulation Z that entitle her to rescind the Loans,

1  obtain the Deed of Trust of her residence, and credit against the Loans' amounts all

2  interest, fees and other costs she paid and/or incurred.

3  SIXTH CLAIM

4  (Slander of Title)

5  97.  Plaintiff incorporates by this reference all earlier paragraphs.

6  98.  On August 2, 2017, Defendants wrongfully filed the Notice of Default.

7  99.  The Notice of Default was wrongful because Plaintiff had validly exercised

8  her rights to rescind the Loan under TILA in a letter dated June 16, 2017 and to offset

9  all interest and finance charges paid to Defendants.

10  100.  The Notice of Default of Default includes a false declaration that "California

11  Civil Code Section 2923.5 or Section 2923.55 do not apply because the loan is not

12  secured by a first mortgage or first deed of trust that secures a loan, or that encumbers

13  real property."

14  101.  Defendants clearly knew or should have known that Loan 2, which is the

15  loan in connection with the Notice of Default, is secured by a first deed of trust against

16  Plaintiff's Residence.

17  102.  The 2015 Deed of Trust securing Loan 2 says that it is a second lien.  This

18  is false given that the escrow documents show that the Loan 2 proceeds were used to

19  pay off Loan 1, and that there are no other mortgages or deeds of trust on the Plaintiff's

20  Residence.

21  103.  Based on the foregoing allegations, foreclosing on Loan 2 must meet the

22  requirement of California Civil Code §§ 2923 and 2924.

23  104.  Defendants or its agents never called or visited Plaintiff as required under

24  Cal. Civil Code § 2923.5 to discuss Plaintiff's financial situation.  Plaintiff has been living

25  at her residence that is encumbered by the Loan 2 and Plaintiff's phone number and

26  email are on file with Defendants.  Thus, there is no reason or good faith actions on the

27  part of Defendants for failing to contact Plaintiff and have a discussion regarding

28  Plaintiff's financial situation as required by law.  Accordingly, the requisite 30-day

1  period has not even begun to start, which makes Defendants' recording of the Notice of

2  Default unlawful under Cal. Civil Code § 2923.5.

3      105.  Moreover, Plaintiff requested a loan modification application with

4  Defendants, and Defendants failed to provide a loan modification application to

5  Plaintiff as required under California law, and until that loan modification process is

6  done, under Cal. Civil Code § 2924.18, Defendants cannot record a Notice of Default.

7      106.  The total debt stated on the Notice of Default includes accrued interest of

8  17% as well as other charges, all of which are improper given that the 17% interest

9  rate is disallowed under TILA and HOEPA, and that Plaintiff dutifully rescinded Loan 2

10  that is secured by the 2015 Deed of Trust that Defendant LB Lending is attempting to

11  foreclose upon, and thus Defendant LB Lending is prohibited from claiming such

12  accrued interest and charges that stems from its wrongful refusal to release the Deed

13  of Trust pursuant to TILA.

14      107.  Plaintiff's reputation and creditworthiness has been adversely affected by

15  the wrongful recordation of the Notice of Default.  The wrongful recordation of the

16  Notice of Default was the proximate cause of damage to Plaintiff, including but not

17  limited to Plaintiff not being able to refinance Loan 2, the exact amount will be proven

18  at time of trial.

19      108.  Defendants' actions in wrongfully recording the Notice of Default was

20  intentional, malicious and oppressive, entitling Plaintiff to punitive damages to be

21  proven at time of trial.

22      WHEREFORE, Plaintiff prays as follows:

23      As to First Claim for Relief:

24      1. A declaration that Plaintiff has validly rescinded her Loans under the Truth in

25  Lending Act and is entitled to the appropriate remedies flowing from such rescission;

26      2. Civil penalties of $4,000 each;

27      3. For actual and statutory damages and penalties as alleged herein;

28      4. Statutory attorneys' fees at a multiple to be determined by motion, and

1    5. Actual damages in an amount to be proven at time of trial.

2    As to the Second Claim for Relief:

3    1. Temporary, preliminary and permanent injunctive relief restraining

4    Defendants' future violation of the complained of business practices;

5    2. Restitution of interest paid to Plaintiff who has been negatively affected by

6    the unfair business practices during the last four years; and,

7    3. An order giving Plaintiff her rights under TILA and HOEPA by reason of the

8    violations of those sections by Defendants.

9    As to the Third Claim for Relief:

10   1. Restitution of interest paid to Plaintiff who has been negatively affected by

11   the unfair business practices during the last four years;

12   2. An order giving Plaintiff her rights under TILA and HOEPA by reason of the

13   violations of those sections by Defendants.

14   3. Punitive or exemplary damages in an amount to be proven at time of trial.

15   As to the Fourth Claim for Relief:

16   1. Restitution of interest paid to Plaintiff who has been negatively affected by

17   the unfair business practices during the last four years; and,

18   2. An order giving Plaintiff her rights under TILA and HOEPA by reason of the

19   violations of those sections by Defendants;

20   3. Money damages in an amount to be proven at time of trial; and

21   4. Punitive or exemplary damages in an amount to be proven at time of trial.

22   As to the Fifth Claim for Relief:

23   1. Restitution of interest paid to Plaintiff who has been negatively affected by

24   the unfair business practices during the last four years; and,

25   2. An order giving Plaintiff her rights under TILA and HOEPA by reason of the

26   violations of those sections by Defendants; and

27   3. Money damages in an amount to be proven at time of trial.

28

1    As to the Sixth Claim for Relief:

2        1. Temporary, preliminary and permanent injunctive relief restraining

3    Defendant from foreclosing on its deed of trust for Plaintiff's residence;

4        2. An order requiring Defendants to rescind the Notice of Default;

5        3. Money damages in an amount to be proven at time of trial;

6        4. Punitive or exemplary damages in an amount to be proven at time of trial.

7        As to all claims for relief:

8        1. Payment by Defendants to counsel for the Plaintiff of reasonable attorneys'

9    fees by the statute sought to be enforced or alternatively, under the substantial benefit

10   doctrine, or alternatively, under the common fund doctrine from sums collected from

11   Defendants for distribution to injured parties;

12       2.     Costs of the action; and

13       3.     General relief.

14

15   Dated September 20, 2017

                                          Tracy T. Woo
16                                        Attorney for Plaintiff

17

18                           DEMAND FOR JURY TRIAL

19        Plaintiff demands trial by jury on each of the above claims for relief.

20

21   Dated: September 20, 2017

                                          Tracy T. Woo
22                                        Attorney for Plaintiff

23

24

25

26

27

28