UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-1580 JGB (SPx)** | Date | November 16, 2017 |
|---|---|---|---|
| Title | *Amy Cox v. LB Lending, LLC et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING IN PART and DENYING IN PART Defendants LB Lending, LLC and Macoy Capital Partners, Incorporated's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 16); and (2) DENYING Plaintiff Amy Cox's Motion for Preliminary Injunction (Dkt. No. 17)

Two motions are before the Court. Defendants LB Lending, LLC and Macoy Capital Partners, Inc. (collectively, "Defendants") filed a Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ("MTD," Dkt. No. 16). Additionally, Plaintiff Amy Cox ("Plaintiff") filed a Motion for Preliminary Injunction. ("MPI," Dkt. No. 17.) After consideration of the papers filed in support of and in opposition to these motions, the Court GRANTS the Motion to Dismiss IN PART and DENIES it IN PART and DENIES the Motion for Preliminary Injunction.

## I. BACKGROUND

### A. Procedural History

On August 4, 2017, Plaintiff filed a First Amended Complaint against Defendants. ("FAC," Dkt. No. 13.) The FAC alleged six causes of action: (1) violation of Federal Truth-in-Lending Act, 15 U.S.C. § 1601 ("TILA"); (2) violation California Business and Professions Code § 17200 for unfair business practices; (3) fraud; (4) breach of fiduciary duties; (5) negligence; and (6) slander of title. (FAC ¶¶ 52–108.) Plaintiff seeks declaratory relief, injunctive relief, and damages.

On October 11, 2017, Defendants filed the instant MTD.  Plaintiff filed an Opposition to Defendants' MTD on October 25, 2017.  ("MTD Opposition," Dkt. No. 25.)  On October 15, 2017, Plaintiff filed the instant MPI.  Defendants opposed on November 1, 2017.  ("MPI Opposition," Dkt. No. 28.)  Plaintiff filed a reply on November 5, 2017.  ("MPI Reply," Dkt. No. 29.)[1]

**B. Factual Background**

    **1. Loan 1**

According to the FAC, on or before February 2011, Plaintiff had taken out a loan with Jerome M. Covin, Trustee of the Covin Family Trust.  ("Covin Loan," FAC ¶¶ 8–9.)  The Covin Loan was set to expire on May 31, 2011.  (Id. ¶ 9.)  Defendant Macoy Capital orchestrated an extension until May 31, 2013.  (Id. ¶ 10.)  In July of 2012, Plaintiff asked Defendant Macoy Capital to refinance the Covin Loan with a traditional 30-year fixed term.  (Id. ¶ 10.)  Defendant Macoy Capital, however, arranged for a one-year loan with Defendant LB Lending in August of 2012.  ("Loan 1," id. ¶ 11.)  Defendants sent Plaintiff the Loan 1 documents two days before the October 5, 2012 closing date.  (Id.)  Prior to closing Loan 1, Plaintiff requested a 24-month term.  (Id.)  Defendants told Plaintiff that she would have to refinance Loan 1 in 12 months.  (Id.)  Loan 1 was for $180,000 and secured by a deed of trust on Plaintiff's residence.  (Id.)

Plaintiff alleges that Defendants knew or should have known that the purpose of Loan 1 was to refinance the Covin Loan and for other personal reasons.  (Id. ¶ 13.)  Defendants never asked Plaintiff if Loan 1 was for a business purpose or requested information concerning a business purpose.  (Id. ¶ 14.)  Plaintiff alleges that Defendants knew or should have known that all of the proceeds of Loan 1 were going to be used in connection with Plaintiff's primary residence and other personal expenses.  (Id. ¶ 15.)

In August 2013, Defendant Macoy Capital orchestrated an extension of Loan 1's maturity date from August 31, 2013 to August 31, 2015.  (Id. ¶ 16.)  Defendant Macoy Capital orchestrated this two year extension despite Plaintiff again asking for a "traditional loan," such as a 30-year fixed rate.  (Id.)  Plaintiff did not learn that she would not be getting a traditional home loan until the day before signing the loan documents.  (Id. ¶ 23.)  Plaintiff did not receive the extension documents until after the initial maturity date of August 31, 2013, consequently, Defendants backdated all of the Loan 1 extension documents.  (Id. ¶ 17.)  Defendant Macoy Capital told Plaintiff to sign the documents immediately and return them via overnight mail, leaving Plaintiff under financial pressure to sign the extension.  (Id.)  During the process of Loan 1, Defendants provided Plaintiff with several loan documents, including a Deed of Trust With Assignment of Rents, Security Agreements And Fixture Filings.  ("2013 Deed of Trust," id. ¶ 18.)  The 2013

---

[1] Plaintiff's MPI Reply was 15 pages in length, exceeding the 12-page limit the Court imposes on replies.  (See Standing Order, Dkt. No. 9, at 4.)  The Court warns Plaintiff to heed the procedural rules stated in the Standing Order.  Future violations may result in sanctions.

Deed of Trust secured Loan 1 using Plaintiff's principal residence. (Id. ¶ 19.) Plaintiff "made clear" to Defendants that the property secured by Loan 1 was her principal residence. (Id.)

Loan 1 was for a principal amount of $180,000, initially for a term of 12 months at an annual interest rate of 8.5%, but later extended an additional 24 months at the same interest rate. (Id. ¶ 20.) Plaintiff was to make monthly interest-only payments, and a balloon payment of the principal balance would be due at the maturity date. (Id.) Loan 1 provided a default rate of 17.99%. (Id. ¶ 23.) The loan is more than 6.5 points above the federal Average Prime Rate Offer, and thus a "high cost" loan governed by 15 C.F.R. § 1026.35 of Regulation Z.

**2. Loan 2**

Knowing that Loan 1 was set to mature in August, Defendants informed Plaintiff that Defendant LB Lending would refinance Loan 1 with a new loan in June of 2015. ("Loan 2," id. ¶¶ 25–26.) Loan 2 would be for $270,000 and secured by a deed of trust on Plaintiff's residence. (Id. ¶ 26.) Plaintiff alleges that Defendants knew or should have known that the purpose of Loan 2 was to refinance Loan 1 and for other personal purposes. (Id. ¶ 27.) Defendants never asked if Loan 2 was for a business purpose, or requested information concerning a business purpose. (Id. ¶ 28.) Plaintiff alleges that Defendants knew or should have known that all of the proceeds of Loan 2 were going to be used in connection with Plaintiff's primary residence and other personal expenses. (Id. ¶ 29.)

Around the time of closing Loan 2 in June 2015, Plaintiff noticed that the Loan 2 loan documents stated that Loan 2 was for a business purpose. (Id. ¶ 30.) Plaintiff told Defendants that she did not understand this language, as she intended to use Loan 2 to refinance Loan 1 and for personal purposes. (Id.) Defendants responded by saying, "Don't worry about it; it's just language that we have to use." (Id.) Plaintiff signed Loan 2 in reliance on Defendants' response. (Id. ¶ 31.)

On August 26, 2015, well after closing on Loan 2 in June, Defendants provided Plaintiff with a Borrower's Agreement to sign. (Id. ¶ 33.) The Borrower's Agreement stated that Loan 2 was for an investment purpose. (Id.) When Plaintiff asked Defendants about this language, Defendants again told Plaintiff not to worry about it. (Id.) Relying on Defendants' response, Plaintiff signed and returned the document. (Id.) However, Plaintiff left all the areas in the forms that referenced the stated purpose of the business or investment blank. (Id. ¶ 34.) Defendants did not investigate this lack of information. (Id.)

Defendants gave Plaintiff several loan documents, among them was a Deed of Trust with Assignment of Rents, Security Agreements and Fixture Filings, dated June 9, 2015. ("2015 Deed of Trust," id. at 32.) The 2015 Deed of Trust secured Loan 2 using Plaintiff's principal residence. (Id. ¶ 35.) As the proceeds of Loan 2 would pay off Loan 1, the 2015 Deed of trust released and replaced the 2013 Deed of Trust. (Id. ¶¶ 35–36.) Loan 2 was for $270,000, payable within 24 months at an annual interest rate of 8.5%. (Id. ¶ 38.) Plaintiff was to make monthly

interest-only payments and a balloon payment of the principal balance on the maturity date. (Id.) Loan 2 provided for a default rate of 17%. (Id.)

On June 7, 2017, Defendants sent a letter to Plaintiff saying that Plaintiff was in default. (Id. ¶ 50.) On June 16, 2017, Plaintiff sent a notice of rescission under TILA to Defendants and expressed a willingness to repay Defendants the amount Plaintiff would owe as a result of rescission. (Id.) Defendant has not yet released its security interest in Plaintiff's residence. (Id.)

## II.   MOTION TO DISMISS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

B. **Statute of Limitations**

  1. **TILA Claim**

In her FAC, Plaintiff alleges Defendants violated TILA. Defendants argue Plaintiff's Loan 1 TILA claim is barred by the applicable statute of limitations. (MTD at 7.) Under TILA, a claimant's right of rescission expires after three years. See 15 U.S.C. § 1635(1). Equitable tolling does not apply to rescission. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412–19 (1998). Additionally, an action for damages must be brought within one year of the violation. See 8 U.S.C. § 1640(e). However, a TILA damages action can be equitably tolled in "appropriate circumstances." King v. State of Cal., 784 F.2d 910, 915 (9th Cir. 1986). A plaintiff seeking equitable tolling must allege "specific facts explaining the failure to learn the basis for the claim within the statutory period." Pederson v. Greenpoint Mortg. Funding, Inc., 900 F. Supp. 2d 1071, 1079 (E.D. Cal. 2012). A plaintiff cannot rely on the same facts to show a violation of the federal statute and to toll the statute of limitations. Vargas v. JP Morgan Chase Bank, N.A., 30 F. Supp. 3d 945, 949 (C.D. Cal. 2014). Equitable tolling applies when there is "excusable delay" by the plaintiff. Id. (quoting Rodriguez v. JP Morgan Chase & Co., 809 F. Supp. 2d 1291, 1298 (S.D. Cal. 2011).

Here, Plaintiff obtained Loan 1 in 2013 and filed suit in 2017. After three years, there is "no federal right to rescind." Beach, 523 U.S. at 419. Courts lack subject matter jurisdiction over this claim after the three-year period has run. See Miguel v. Country Funding Corp., 309 F.3d 1161, 1164–65 (9th Cir. 2002). Consequently, Plaintiff is unable to seek rescission of Loan 1.

The remaining question is whether Plaintiff's TILA damages claim as to Loan 1 has also run afoul of the statute of limitations. Plaintiff asks the Court to equitably toll the statute of limitations until earlier this year, when Plaintiff had a conversation with an attorney and learned of her potential claims. (MTD Opposition at 16–17.) Plaintiff argues that Defendants' allegedly egregious conduct warrants equitable tolling in this circumstance. (Id. at 9.) Taking the factual allegations in the FAC as true, the Court agrees that Defendants' behavior warrants equitable tolling of the statute of limitations. Courts have typically held that the mere existence of TILA violations combined with a defendant's failure to disclose does not warrant equitable tolling. See, e.g., Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 905–06 (C.D. Cal. 2009); Hubbard v. Videlity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996). However, Plaintiff, a lay-person, had no means of knowing she might have a TILA claim. Indeed, a central part of Defendants' argument is that she has none. Defendants argue that the plain face of the loan agreements indicate that TILA does not apply. (MTD at 11.) Defendants are clearly correct in this assessment; the loan documents facially state that these are business loans, and TILA does not govern business loans. However, the Court is not comfortable ruling that Plaintiff must possess a lawyer's education and access to Westlaw just to discover that she *might* have an actionable TILA claim despite the plain language. In conjunction with the assumed-to-be-true predatory behavior by the Defendants, the Court finds these circumstances appropriate to equitably toll the one-year statute of limitations until Plaintiff had a chance to consult an attorney earlier this year. Thus, while Plaintiff has no

federal right to rescission of Loan 1, the Court equitably tolls the running of the statute of limitations for her damages claim under TILA to June 16, 2017.

### 2. Unfair Business Practices Claim

There is a four-year statute of limitations for claims under California Business and Professions Code § 17208. Plaintiff here initially received Loan 1 in August of 2012, then received an extension for that loan in August of 2013. Critically, Plaintiff filed her complaint in August of 2017. Thus, on the face of her complaint, any claims for violations of the California Business and Professions Code § 17208 occurring before August 2013 are barred. In her Opposition, Plaintiff briefly argues that this statute of limitations should be tolled in conjunction with the statute of limitations for her TILA claim, as she did not discover the possibility of either claim until she talked with her attorney in 2017. Under the "delayed discovery rule," the statute of limitations starts to run "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." Habtemariam v. Vida Capital Grp., LLC, No. 216CV01189MCEGGH, 2017 WL 627404, at *5 (E.D. Cal. Feb. 14, 2017) (citing Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988)).

Unlike Plaintiff's TILA claim, where the face of the loan documents prevented her from suspecting that TILA might apply, by her own complaint Plaintiff either suspected or should have suspected that Defendants may have engaged in unfair business practices. As recounted above, in July of 2012, Plaintiff asked Defendant Macoy Capital to refinance the Covin Loan with a traditional 30-year fixed term. (FAC ¶ 10.) Defendant Macoy Capital, however, arranged for a for a one-year loan with Defendant LB Lending in August of 2012. (Id. ¶ 11.) Defendants sent Plaintiff the Loan 1 documents two days before the October 5, 2012 closing date. (Id.) Prior to closing Loan 1, Plaintiff requested a 24-month term, but received a 12-month term. (Id.) These incidents were enough to trigger suspicion, and thus begin the running of the statute of limitations. Consequently, while Plaintiff has sufficiently stated a claim for any activity occurring after August 4, 2013, any claims based on activity occurring before that date are barred by the four-year statute of limitations.

### 3. Fraud, Breach of Fiduciary Duty, and Negligence Claims

The statute of limitations for fraud claims under California Civil Procedure Code § 338 is three years. The statute of limitations for breach of fiduciary duty is three years. See Yamauchi v. Cotterman, 84 F. Supp. 3d 993, 1010 (N.D. Cal. 2015). The statute of limitations for negligence is two years. Cal. Civ. Proc. Code § 339. As above, the discovery rule could toll these statutes of limitations until Plaintiff has a reason to discover the existence of a claim. See Apr. Enterprises, Inc. v. KTTV, 195 Cal. Rptr. 421 (1983) (a cause of action accrues "when the plaintiff discovers or should have discovered all facts essential to his cause of action.") An adequate pleading of delayed discovery requires more than a mere conclusory allegation of diligence; it should set forth pleaded facts that show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Yamauchi, 84 F.

Supp. at 1011 (internal quotations omitted) (citing Czajkowski v. Haskell & White, LLP, 144 Cal. Rptr. 3d 522 (2012).

In this case, Plaintiff has made the requisite showing that she could not have discovered Defendants' allegedly fraudulent misrepresentations earlier. Plaintiff, not being a loan expert, had no way of knowing the importance of the "business purpose" language of her loan documents, and certainly could not have foreseen that these subjected her to fewer protections. Additionally, taking Plaintiff's allegations as true, Defendants were actually aware of Plaintiff's ignorance in this matter and made affirmative statements to keep her ignorant. Plaintiff's breach of fiduciary duty and negligence claims stem directly from her TILA claim, as Defendants have correctly noted. (See MTD at 10, "Plaintiff's [negligence] allegations all stem from Defendants alleged violation of TILA.") And the Court, having already tolled the statute of limitations for Plaintiff's claim for damages under TILA, finds it proper to also toll the statute of limitations for the derivative negligence and breach of fiduciary duty actions. Consequently, the Court finds it appropriate to toll the statute of limitations for all three claims until Plaintiff had a chance to consult with her attorney earlier this year.

In sum, Plaintiff is unable to seek rescission of Loan 1 under TILA, and cannot state a claim for unfair business practices based on activity occurring before August 4, 2013. However, Plaintiff has sufficiently stated a claim for damages under TILA, fraud, breach of fiduciary duty, and negligence.

C. **TILA Governs Loan 1 and Loan 2**

As previewed above, Defendants' next argument is that TILA does not apply to these loans because they were made for business purposes. Congress enacted TILA to "avoid the uninformed use of credit." Mourning v. Family Publications Serv. Inc., 411 U.S. 356, 377 (1973) (quoting 15 U.S.C. § 1601). To ensure that this statutory purpose is achieved, the Ninth Circuit has construed the statute liberally. See Eby v. Reb Realty, Inc., 495 F.2d 646, 650 (9th Cir. 1974). Thus, even minor or technical violations will subject a lender to liability. See Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 704 (9th Cir. 1986) (holding that plaintiff was entitled to rescind because although the lender stated that the right to rescind would expire three days from the date the transaction was consummated, it failed to specify the exact expiration date). "'To insure that the consumer is protected . . . [TILA and the accompanying regulations must] be absolutely complied with and strictly enforced.'" Id. (quoting Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983)). Section 1635(a) of TILA states that a creditor must "clearly and conspicuously disclose" the rights of the obligor, and provide "appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." 15 U.S.C. § 1601.

"The Truth–in–Lending Act specifically exempts from its scope extensions of credit for business or commercial purposes." Galindo v. Financo Financial, Inc., No. C 07–03991 WHA, 2008 WL 4452344, *4 (N.D. Cal. Oct. 3, 2008) (internal quotations omitted) (citing Poe v. First Nat. Bank of DeKalb County, 597 F.2d 895, 896 (5th Cir. 1979) (in turn citing 15 U.S.C. § 1603(1) and 12 C.F.R. § 226.3(a)). In evaluating whether a loan was made for commercial

purposes, the emphasis is on the purpose of the transaction, not the categorization of the property used to secure the loan. See Galindo, 2008 WL 4452344 at *4. See also Gusenkov v. Residential Mortgage Capital, Inc., No. CIV 2:10–CV–1421–MCE–JFM (PS), 2010 WL 3127045, *3 (E.D. Cal. Aug. 9, 2010); Schulken v. Washington Mutual Bank, Henderson, NV, No. C 09-002708 JW, 2010 WL 8971766, *3 (N.D. Cal. Mar. 3, 2010); Daniels v. SCME Mortgage Bankers, Inc., 680 F. Supp. 2d 1126, 1129 (C.D. Cal. 2010). The stated classification of the loan, while significant, is less important than how the loan was actually used. See Slenk v. Transworld Sys. Inc., 236 F.3d 1072, 1074–76 (9th Cir. 2001) (stating that "facts illustrating actual use" were more important than "select documentary evidence). See also Schroeder v. M & I Bank, FSB, No. CV-08-2190-PHX-ROS, 2009 WL 684812, at *1 (D. Ariz. Mar. 16, 2009) (noting that while the plaintiff's loan application stated that it was for personal purposes, plaintiff failed to allege facts regarding how the loan was actually used); Pena v. Cara Brooks Corp. Defined Benefit Pension Plan, No. 09CV720 BTM(AJB), 2010 WL 11508840, at *3–4 (S.D. Cal. Feb. 11, 2010) (finding that, because the stated "business purpose" of the plaintiff's loan was outweighed by other facts, the transaction fell under the scope of TILA).

The Ninth Circuit has identified five factors to consider when determining whether a loan was for personal or business purposes: (1) the relationship of the borrower's primary occupation to the acquisition; (2) the degree to which the borrower will personally manage the acquisition; (3) the ratio of income from the acquisition to the total income of the borrower; (4) the size of the transaction; and (5) the borrower's statement of purpose for the loan. Thorns v. Sundance Properties, 726 F.2d 1417, 1419 (9th Cir. 1984).

Defendants do not argue the first four factors in their MTD, and instead focus exclusively on the fifth factor. (MTD at 12.) This is unexpected given Plaintiff's allegations concerning Defendants' actual knowledge and purported misleading statements regarding the statement of purpose for the loan. Taking Plaintiff's allegations as true, Defendants knew or should have known that Plaintiff had no intention to use the loan proceeds for any business. (FAC ¶¶ 29, 44.) Furthermore, Defendants themselves never believed a business existed, having never asked Plaintiff about the type of business she runs and never inquiring into the reasons why Plaintiff left the business forms blank. (Id. ¶ 34.) These allegations severely dilute the potency of the fifth factor. Concerning the first factor, Plaintiff was unemployed when she received Loan 2. (Id. ¶ 39.) As to the second factor, she alleges that the purpose of the loans were to refinance her house and for other personal uses. (Id. ¶¶ 13–15, 26–29.) Third, Plaintiff alleges that all the loan funds were used to refinance her home and provide for her personal expenses. (Id.) Fourth, the size of the loan is consistent with a home refinance. (Id. ¶¶ 20, 26.) The first four factors all weigh in favor of a personal purpose loan. Looking at the transaction as a whole, and taking the allegations as true, it is clear that Loan 1 and Loan 2 were for personal purposes. TILA thus applies.

### D. The Release

Finally, Defendants argue that all of Plaintiff's Loan 1 claims are barred due to a release she signed when she executed the Loan 1 amendment agreement. Without commenting on the merits of this position, the Court finds that this defense is unsuitable to adjudicate at this stage in

the proceedings. This document was not referenced in the four-corners of Plaintiff's complaint, and consequently the Court will not consider it. Defendants may raise this defense at the summary judgment stage.

### III.  MOTION FOR PRELIMINARY INJUNCTION

**A.  Legal Standard**

A plaintiff seeking a preliminary injunction must establish that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy" that should not be granted "unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (describing the "substantial proof" requirement to grant a preliminary injunction as much higher than the burden of proof for a summary judgment).

The Ninth Circuit has adopted a "sliding scale" test for preliminary injunctions. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. Id. For example, "serious questions" as to the merits of a case, combined with a showing that the hardships tip sharply in the plaintiff's favor, can support the issuance of an injunction, assuming the other two elements of the Winter test are also met. Winter, 555 U.S. at 24 ("Courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, and should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.")

A preliminary injunction can take two forms: either a prohibitory injunction or a mandatory injunction. Chalk v. U.S. Dist. Court Cent. Dist. of California, 840 F.2d 701, 704 (9th Cir. 1988). A prohibitory injunction prevents a party from taking action pending a resolution on the merits, Heckler v. Lopez, 463 U.S. 1328, 1333, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (stating that a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits"), while a mandatory injunction "orders a responsible party to take action." Meghrig v. KFC W., Inc., 516 U.S. 479, 484 (1996). By requiring a nonmovant to take affirmative action, the mandatory injunction "goes beyond simply maintaining the status quo."[2] Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980).

Since the "basic function" of a preliminary injunction is to preserve the status quo pending resolution on the merits, mandatory injunctions are "particularly disfavored." Id.

---

[2] The status quo ante litem is "the last uncontested status which preceded the pending controversy." Tanner v. Motor Livery, Ltd. v. Avis, Inc. , 316 F.2d 804, 809 (9th Cir. 1963).

Indeed, mandatory injunctions will not be issued unless failure to do so will result in "extreme or very serious damage." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009). Mandatory injunctions are also unavailable in doubtful cases, or when the injury alleged can be redressed through an adequate remedy at law. Id.[3]

Plaintiff seeks a preliminary injunction that would "bar [Defendants] from initiating and/or pursuing any foreclosure process of the Deed of Trust to Plaintiff's residence until the underlying TILA complaint has been resolved." (Motion at 9.) The Court will analyze whether Plaintiff has established "by a clear showing" that it is entitled to a preliminary injunction. Mazurek, 520 U.S. at 972.

**B. Likelihood of Success on the Merits**

Here, Plaintiff's allegations are not presumed to be true. Instead, Plaintiff bears the burden of proving that she is likely to succeed on the merits of her claims. To obtain a preliminary injunction, Plaintiff must show that one of her claims entitles her to keep her house, not just that she receive damages for Defendants' allegedly predatory behavior. In her MPI, Plaintiff argues that Defendants have violated TILA by failing to give her a requested loan modification, failing to visit or call Plaintiff before recording the Notice of Default, and by filing a false Declaration of FCI Lender Services. (MPI at 6–7.) Defendants counter by arguing that TILA does not apply to Loan 2, because it was given for a business purpose rather than for a consumer purpose. (MPI Opposition at 12.) Thus, the key issue is whether Plaintiff can show a likelihood of successfully establishing that Loan 2 falls under TILA without the Court taking her allegations as true.

Defendants are quick to point out that Plaintiff originally claimed that the Covin Loan would be for an investment purpose and that the subject property was not her primary residence. (Id. at 2.) Plaintiff also stated on her Covin Loan application that she a self-employed real estate developer and had an income of over $19,000 per month and only $1,500 in per month expenses. Defendants' assertion is supported by the promissory note attached to their MPI Opposition. (MPI Opposition, Exh. 1.) In response, Plaintiff contends that she asked Defendants about these discrepancies prior to signing the promissory note, but that Defendants lied to her about when the promissory note goes into effect. (MPI Reply at 5–6.) Plaintiff argues that these false statements are further evidence of Defendants' intentional ploy to cloak a consumer loan as a business loan. (Id. at 6.) Plaintiff submitted a Declaration supporting this argument. (MPI Reply, Exh. 1 ¶ 11.) Plaintiff and Defendants dispute whether Plaintiff represented the Subject Property as her principle dwelling, and whether Plaintiff orally told Defendants that the Covin Loan was for a consumer purpose.

---

[3] The Ninth Circuit in Marlyn Nutraceuticals, 571 F.3d 873, held that District Court abused its discretion by enjoining the defendant from manufacturing and distributing its allegedly infringing product because by ordering the defendant to cease further distribution of supplements that were no longer in the defendant's possession, the injunction required the defendant to take the affirmative step of recalling its products and "did not operate simply to preserve the status quo."

Defendants present additional evidence supporting their assertion that TILA does not apply to Loan 2. Defendants have submitted documents demonstrating that Plaintiff represented that Loan 1 and Loan 2 were for commercial or business purposes. (See MPI Opposition, Exhs. 1, 4, 5, 6.) Furthermore, Defendants note that Plaintiff leased out the Subject Property for a period of three months, beginning in January 2017. (MPI Opposition, Exh. 8.) Finally, while seeking a third loan in 2017, Plaintiff again represented that it was for investment purposes. (MPI Opposition, Exh. 10.) Plaintiff also stated that she now lived on a different property and that the Subject Property generated $4,000 a month in rental income. (Id.) In response to this documentary evidence, Plaintiff submits testimony alleging several facts. First, Plaintiff declares that Defendants committed fraud through oral conversations which downplayed the importance of the business loan language, thereby diluting the legitimacy of the loan documents. (Cox MPI Declaration, ¶¶ 28–29, 32.) Furthermore, Plaintiff declares that Defendants never seemed interested in verifying that she truly requested the loans for a business purpose. (Id. ¶¶ 14, 22, 26, 28, 29, 35.) Specifically, Plaintiff declares that she left unanswered the portions of the loan documents which asked her to describe her investment purposes. (Id. ¶ 33.) Exhibits submitted by Defendants support this testimony. (See MPI Opposition, Exh. 7.)

Without commenting on the truthfulness of Plaintiff's declarations, it is plain that they, by themselves, do not constitute a likelihood of success on the merits. Plaintiff has indeed established a triable issue of material fact, however, she cannot overcome Defendants' documentary evidence and meet her burden of proof on the strength of her declarations alone. Accordingly, as Plaintiff has failed to establish a likelihood that she will succeed on the merits, the Court finds evaluation of the other prongs to be unnecessary. Plaintiff's entire MPI is based on relief through recession of Loan 2. Thus, the Motion for Preliminary Injunction is DENIED.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion. Plaintiff has sufficiently stated a claim for damages under TILA for Loan 1 and 2, and for rescission of Loan 2. Plaintiff has also sufficiently stated a claim for fraud, breach of fiduciary duty, and negligence. Finally, Plaintiff has sufficiently stated a claim for unfair business practices for conduct occurring after August 4, 2013. However, Plaintiff has failed to state a claim for rescission of Loan 1, and for unfair business practices based on conduct occurring before August 4, 2013. The Court requests that Plaintiff file a Second Amended Complaint consistent with these findings and that cleanly parses which claim is paired with which loan.

Additionally, the Court finds that Plaintiff has failed to show that she would likely succeed on the merits. Thus, the Court DENIES Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**