UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 17-01580 JGB (SPx) | Date | May 23, 2018 |
| Title | *Amy Cox v. LB Lending, LLC et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order: (1) DENYING Plaintiff's Motion to Remand (Dkt. No. 65); (2) DENYING Defendants' Request for Judicial Notice (Dkt. No. 69); and (3) GRANTING Plaintiff's Motion for Reconsideration (Dkt. No. 70)

      Two motions are currently before the Court. Plaintiff Amy Cox ("Plaintiff") filed a Motion to Remand on February 9, 2018. (Motion to Remand.) Defendants LB Lending, LLC and Macoy Capital Partners, Inc. (collectively, "Defendants") filed an opposition on February 19, 2018. ("Remand Opposition," Dkt. No. 68.) Defendants also filed a request for judicial notice in support of their Remand Opposition. ("RJN," Dkt. No. 69.) Plaintiff filed a reply on February 26, 2018. ("Remand Reply," Dkt. No. 75.) Defendants, at the request of the Court, filed a Sur-Reply on May 8, 2018. ("Sur-Reply," Dkt. No. 92.) Additionally, on February 23, 2018, Plaintiff filed a Motion for Reconsideration for Preliminary Injunction. ("Motion for Reconsideration," Dkt. No. 70.) Defendants filed a document which the Court has construed as an opposition on February 27, 2018. ("Reconsideration Opposition," Dkt. No. 76.) Plaintiffs filed a reply on March 29, 2018. ("Reconsideration Reply," Dkt. No. 81.) The Court held a hearing on these matters on May 21, 2018. Upon consideration of the papers filed in support of and in opposition to these motions, as well as the arguments presented at the hearing, the Court DENIES Plaintiff's Motion to Remand, DENIES Defendants' RJN, and GRANTS Plaintiff's Motion for Reconsideration.

## I. BACKGROUND

### A. Procedural History

The procedural and filing history of this case is complex. On August 4, 2017, Plaintiff filed a First Amended Complaint against Defendants. ("FAC," Dkt. No. 13.) The FAC alleged six causes of action: (1) violation of Federal Truth-in-Lending Act, 15 U.S.C. § 1601 ("TILA"); (2) violation California Business and Professions Code § 17200 for unfair business practices; (3) fraud; (4) breach of fiduciary duties; (5) negligence; and (6) slander of title. (FAC ¶¶ 52–108.) On October 15, 2017, Plaintiff filed her initial Motion for Preliminary Injunction. ("Initial Motion," Dkt. No. 17.) On November 16, 2017, the Court denied Plaintiff's Initial Motion. ("November Order," Dkt. No. 34.) On November 17, 2017, Plaintiff appealed the Court's decision to the Ninth Circuit. (Dkt. No. 35.) On November 30, 2017, Plaintiff filed a Motion for Preliminary Injunction Pending Appeal claiming she had discovered new evidence. ("MPIPA," Dkt. No. 45.) The Court Granted Plaintiff's MPIPA. ("December Order," Dkt. No. 55.) Plaintiff also filed a Second Amended Complaint on December 16, 2017. ("SAC," Dkt. No. 51.) The SAC contains the same six causes of action as the FAC, and adds a cause of action for rescission under TILA. (Id. ¶¶ 74–78.)

On December 18, 2017, Plaintiff filed a complaint in the California Superior Court for the County of Riverside, asserting one cause of action for the cancellation and expungement of instruments. ("State Complaint," Dkt. No. 64 at 12–16.) On January 24, 2018, Defendants removed Plaintiff's State Complaint to federal court. (Dkt. No. 64.) On February 9, 2018, Plaintiff then filed this Motion to Remand.

On February 22, 2018, The Ninth Circuit affirmed the Court's denial of Plaintiff's Initial Motion. (Dkt. No. 71.) As a result, Plaintiff filed this Motion for Reconsideration on February 23, 2018. On the same day, Plaintiff filed a Temporary Restraining Order and requested the Court enjoin Defendants from continuing with foreclosure proceedings until the Court ruled on her Motion for Reconsideration. ("TRO," Dkt. No. 72.) The Court granted Plaintiff's TRO on March 5, 2018. (Dkt. No. 78.) Although Defendants filed an opposition to Plaintiff's TRO on February 27, 2018 (Dkt. No. 76), Defendants failed to separately oppose Plaintiff's Motion for Reconsideration. Because Defendants' TRO Opposition substantively discussed the underlying merits of Plaintiff's Motion for Reconsideration, the Court construed the TRO Opposition to also oppose Plaintiff's Motion for Reconsideration and ordered Plaintiff to reply. (Dkt. No. 80.) Additionally, the Court ordered Defendants to file a Sur-Reply addressing two points Plaintiff made in her Motion to Remand and in her Motion for Reconsideration. (Dkt. No. 82.) Defendants timely filed its Sur-Reply on May 8, 2018. (Dkt. No. 92.)

### B. Factual History

#### 1. Loan 1

According to the SAC, on or before February 2011, Plaintiff had taken out a loan with Jerome M. Covin, Trustee of the Covin Family Trust. ("Covin Loan," SAC ¶¶ 10–11.) The Covin Loan was set to expire on May 31, 2011. (Id. ¶ 11.) Defendant Macoy Capital Partners, Inc. ("Macoy") orchestrated an extension until May 31, 2013. (Id.) In July of 2012, Plaintiff asked Macoy to refinance the Covin Loan with a traditional 30-year fixed term. (Id. ¶ 12.) Macoy, however, arranged for a one-year loan with Defendant LB Lending in August of 2012. ("Loan 1," id. ¶ 13.) Defendants sent Plaintiff the Loan 1 documents two days before the October 5, 2012 closing date. (Id.) Prior to closing Loan 1, Plaintiff requested a 24-month term. (Id.) Defendants told Plaintiff she would have to refinance Loan 1 in 12 months. (Id.) Loan 1 was for $180,000 and secured by a deed of trust on Plaintiff's residence. (Id. ¶ 14.)

Plaintiff alleges Defendants knew or should have known the purpose of Loan 1 was to refinance the Covin Loan and for other personal reasons. (Id. ¶ 15.) Defendants never asked Plaintiff if Loan 1 was for a business purpose or requested information concerning a business purpose. (Id. ¶ 18.) Plaintiff alleges Defendants knew or should have known all of the proceeds of Loan 1 were going to be used in connection with Plaintiff's primary residence and other personal expenses. (Id. ¶ 19.)

In August 2013, Macoy orchestrated an extension of Loan 1's maturity date from August 31, 2013 to August 31, 2015. (Id. ¶ 20.) Macoy orchestrated this two year extension despite Plaintiff again asking for a "traditional loan," such as a 30-year fixed rate loan. (Id.) Plaintiff did not learn she would not be getting a traditional home loan until the day before signing the loan documents. (Id. ¶ 27.) Plaintiff did not receive the extension documents until after the initial maturity date of August 31, 2013; consequently, Defendants backdated all of the Loan 1 extension documents. (Id. ¶ 21.) Macoy told Plaintiff to sign the documents immediately and return them via overnight mail, leaving Plaintiff under financial pressure to sign the extension. (Id.) During the process of Loan 1, Defendants provided Plaintiff with several loan documents, including a Deed of Trust With Assignment of Rents, Security Agreements And Fixture Filings. ("2013 Deed of Trust," id. ¶ 22.) The 2013 Deed of Trust secured Loan 1 using Plaintiff's principal residence. (Id. ¶ 23.) Plaintiff "made clear" to Defendants the property secured by Loan 1 was her principal residence. (Id.)

Loan 1 was for a principal amount of $180,000, initially for a term of 12 months at an annual interest rate of 8.5%, but later extended an additional 24 months at the same interest rate. (Id. ¶ 24.) Plaintiff was to make monthly interest-only payments, and a balloon payment of the principal balance would be due at the maturity date. (Id.) Loan 1 provided a default rate of 17.99%. (Id. ¶ 27.) The loan is more than 6.5 points above the federal Average Prime Rate Offer, and thus a "high cost" loan governed by 15 C.F.R. § 1026.35 of Regulation Z.

### 2. Loan 2

Knowing that Loan 1 was set to mature in August 2015, Defendants informed Plaintiff that Defendant LB Lending would refinance Loan 1 with a new loan in June of 2015. ("Loan 2," id. ¶¶ 29–30.) Loan 2 would be for $270,000 and secured by a deed of trust on Plaintiff's residence. (Id. ¶ 30.) Plaintiff alleges Defendants knew or should have known that the purpose of Loan 2 was to refinance Loan 1 and for other personal purposes. (Id. ¶ 31.) Defendants never asked if Loan 2 was for a business purpose, or requested information concerning a business purpose. (Id. ¶ 33.) Plaintiff alleges Defendants knew or should have known that all of the proceeds of Loan 2 were going to be used in connection with Plaintiff's primary residence and other personal expenses. (Id. ¶ 34.)

Around the time of closing Loan 2 in June 2015, Plaintiff noticed the Loan 2 loan documents stated Loan 2 was for a business purpose. (Id. ¶ 35.) Plaintiff told Defendants she did not understand this language, as she intended to use Loan 2 to refinance Loan 1 and for personal purposes. (Id.) Defendants responded by saying, "Don't worry about it; it's just language that we have to use." (Id.) Plaintiff signed Loan 2 in reliance on Defendants' response. (Id. ¶ 36.)

On August 26, 2015, well after closing on Loan 2 in June 2015, Defendants provided Plaintiff with a Borrower's Agreement to sign. (Id. ¶ 38.) The Borrower's Agreement stated Loan 2 was for an investment purpose. (Id.) When Plaintiff asked Defendants about this language, Defendants again told Plaintiff not to worry about it. (Id.) Relying on Defendants' response, Plaintiff signed and returned the document. (Id.) However, Plaintiff left all the areas in the forms that referenced the stated purpose of the business or investment blank. (Id. ¶ 39.) Defendants did not investigate this lack of information. (Id.)

Defendants gave Plaintiff several loan documents, including a Deed of Trust with Assignment of Rents, Security Agreements and Fixture Filings, dated June 9, 2015. ("2015 Deed of Trust," id. at 37.) The 2015 Deed of Trust secured Loan 2 using Plaintiff's principal residence. (Id. ¶ 40.) As the proceeds of Loan 2 would pay off Loan 1, the 2015 Deed of trust released and replaced the 2013 Deed of Trust. (Id. ¶¶ 40–41.) Loan 2 was for $270,000, payable within 24 months at an annual interest rate of 8.5%. (Id. ¶ 43.) Plaintiff was to make monthly interest-only payments and a balloon payment of the principal balance on the maturity date. (Id.) Loan 2 provided for a default rate of 17%. (Id.)

On June 7, 2017, Defendants sent a letter to Plaintiff saying she was in default. (Id. ¶ 55.) On June 16, 2017, Plaintiff sent a notice of rescission under TILA to Defendants and expressed a willingness to repay Defendants the amount Plaintiff would owe as a result of rescission. (Id.) Defendants have not yet released its security interest in Plaintiff's residence. (Id.)

### C. Prior Orders

#### 1. The November Order

In Plaintiff's Initial Motion, she sought a preliminary injunction preventing Defendants from foreclosing on her home. The crucial issue centered on whether Loan 2 was governed by TILA. Whether Loan 2 was governed by TILA turned on whether the loan was made for a business purpose or for a consumer purpose. In finding against Plaintiff, the Court stated:

> Without commenting on the truthfulness of Plaintiff's declarations, it is plain that they, by themselves, do not constitute a likelihood of success on the merits. Plaintiff has indeed established a triable issue of material fact, however, she cannot overcome Defendants' documentary evidence and meet her burden of proof on the strength of her declarations alone.

(November Order at 11.)

#### 2. The December Order

After the Court ruled against Plaintiff in the November Order, Plaintiff appealed the decision to the Ninth Circuit. Additionally, she filed her MPIPA and argued that new evidence warranted an injunction. (See generally, MPIPA.) In the December Order, the Court noted:

> Plaintiff now comes before the Court armed with new evidence which she labels a "smoking gun." This new evidence is a 2012 completed residential loan application given to Plaintiff by Defendants on which Plaintiff stated she sought a conventional residential loan on her primary residence. In her attached declaration, Plaintiff states she submitted the Residential Loan Application to Defendants on September 26, 2012. Plaintiff contends this new evidence affirmatively demonstrates Defendants knew Plaintiff requested the loan for a consumer purpose. Importantly, the Residential Loan Application applies specifically to Loan 1.
>
> Defendants shrug off this new evidence, arguing the Residential Loan Application "is not a new fact, as Plaintiff has always maintained that all the loans she obtained from LB were for consumer purposes." Here, however, Defendants miss the point. Yes, Plaintiff has always maintained the loans were for consumer purposes. But in her Initial Motion, Plaintiff's only evidence on this point were her declarations. The Court specifically found "her declarations alone" could not establish a likelihood of success on the merits.

(December Order at 7 (citations omitted).) The Court noted this was a "close case," but granted Plaintiff's MPIPA because the new evidence demonstrated she had met the requisite factors articulated in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 24 (2008). (Id. at 7–8.) That new evidence is what Plaintiff now asks the court to consider in her Motion for Reconsideration. Accordingly, as the Court has already analyzed how the new evidence would

alter the Winter calculus (See December Order), the only question for the Court to decide in regards to Plaintiff's Motion for Reconsider is whether Plaintiff has appropriately met the standard for reconsideration. As outlined later in this Order, the Court finds that she has.

## II. LEGAL STANDARD

### A. Motion to Remand

Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, federal courts only have original jurisdiction over civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332.

Moreover, the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also Jackson v. Specialized Loan Servicing, LLC, No. CV 14-05981 MMM PLAX, 2014 WL 5514142, at *6 (C.D. Cal. Oct. 31, 2014) (quoting Gaus). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Jackson, 2014 WL 5514142, at *6. The court must resolve doubts regarding removability in favor of remanding the case to state court. Id.

When a federal claim is joined with state claims in the same action, the federal court has "supplemental jurisdiction over all [state] claims that are so related to [the federal] claim[ ] . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In United Mine Workers v. Gibbs, 383 U.S. 715 (1966), the Supreme Court observed that if "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." Id. at 725; see also Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together," quoting Trustees of the Construction Industry and Laborers Health and Welfare Trust v. Desert Valley Landscape & Maintenance, Inc., 333 F.3d 923, 925 (9th Cir. 2003)).

The exercise of supplemental jurisdiction is discretionary. See Gibbs, 383 U.S. at 725; see also 18 U.S.C. § 1367(c) (identifying four reasons why a district court may choose to decline supplemental jurisdiction: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction"). The "justification [for exercising supplemental jurisdiction] lies in considerations of judicial economy, convenience and fairness to litigants." Gibbs, 383 U.S. at 726; see also

Carnegie–Mellon University v. Cohill, 484 U.S. 343, 350 (1988) ("As articulated by Gibbs, the doctrine of pendent jurisdiction . . . is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns").

### B. Motion for Reconsideration

As a general matter, motions for reconsideration are disfavored and are appropriate only if: (1) the movant presents newly discovered evidence; (2) the Court committed clear error or the initial decision was manifestly unjust; or (3) an intervening change in controlling law has occurred. See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. AC & S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); C.D. Cal. L.R. 7-18. Accordingly, a party should not file a motion to reconsider to ask a court "to rethink what the court had already thought through—rightly or wrongly." Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

### III. DISCUSSION

### A. Request for Judicial Notice

Defendants request judicial notice of the Minute Order of the December 20, 2017 Ex Parte Hearing regarding Temporary Restraining Order in the Superior Court of California, County of Riverside Case No. PSC 1706998 ("ExP Minute Order," Dkt. No. 69, Exh. A). (RJN at 1–2.)

Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Proceedings of other courts, including orders and filings, are also the proper subject of judicial notice when directly related to the case. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (stating that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") "It is unnecessary to take judicial notice of opinions from other courts because this Court can consider other legal authorities without judicially noticing the opinions." Rios v. CWGS Enterprises, LLC, No. CV1703614RSWLAFMX, 2017 WL 3449052, at *2 (C.D. Cal. Aug. 11, 2017).

The Court declines to take judicial notice of the ExP Minute Order, as the Court does not rely on it in its decision. Thus, the Court DENIES the RJN.

### B. Motion to Remand

On December 15, 2017, Plaintiff filed a complaint in the Superior Court of the State of California for the County of Riverside which sought the cancellation of the instrument on Plaintiff's residence as a cloud on title and a declaration that the deed of trust for Plaintiff's residence is void. (Motion to Remand at 4–5; see also State Complaint.) Plaintiff notes that California Revenue & Tax Code § 23304.1(b) states that "[i]f a foreign taxpayer that neither is qualified to do business nor has an account number from the Franchise Tax Board, fails to file a tax return required under this part, any contract made in this state by that taxpayer during the applicable period specified in subdivision (c) shall, subject to § 23304.5, be voidable at the request of any party to the contract other than the taxpayer." In her State Complaint, Plaintiff alleges LB Lending ("LB") is an unregistered foreign corporation conducting business in California (State Complaint ¶ 5), and consequently the deed of trust, notice of default, and notice of trustee sale are void "based upon forgery/fraud and non-compliance with the Legislature Counsel Bureau, State of California, Revenue & Tax Code," and other California laws. (Id. ¶ 11.) On January 24, 2018, Defendants removed Plaintiff's State Complaint to federal court. (Dkt. No. 64.) On February 9, 2018, Plaintiff then filed this Motion to Remand.

In her Motion to Remand, Plaintiff makes three arguments: (1) Defendants' Notice of Removal is untimely; (2) the underlying state action involves claims that are not so intertwined with the underlying TILA claims as to warrant removal; and (3) the underlying state action claims raise potentially novel or complex issues of state law. (Motion to Remand at 8–16.)

#### 1. Timeliness

According to 28 U.S.C. § 1446(b)(1), "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant[.]"

Plaintiff contends that LB made a general appearance at a hearing for Plaintiff's state Ex Parte application and waived any service of process defects on December 20, 2017. (Motion to Remand at 9.) Thus, Plaintiff argues Defendants' Notice of Removal was untimely as it was filed on January 24, 2018. (Id.) Plaintiff cites to Dial 800 v. Fesbinder, 118 Cal. App. 4th 32, 54 (2004), for the proposition that "[a] party who seeks relief on any basis other than a motion to quash for lack of personal jurisdiction will be deemed to have made a general appearance and waived all objections to defects in service, process, or personal jurisdiction." Plaintiff acknowledges, however, that California law provides that an "appearance at a hearing at which ex parte relief is sought, or an appearance at a hearing for which an ex parte application for a provisional remedy is made, is not a general appearance and does not constitute a waiver of the right to [file a motion to quash]." (Motion to Remand at 10 (quoting Cal. Code. Civ. Pro. § 418.11).) Plaintiff unsuccessfully attempts to shroud the plain meaning of this statute. Without citation to persuasive or binding authority, Plaintiff characterizes Defendants' request for

sanctions at the ex parte hearing as "seeking affirmative relief." (Remand Reply at 4–5.) By this characterization, Plaintiff then tries to argue Defendants transformed their appearance into a general appearance. Without legal citation, this argument is unavailing. Defendants' Notice of Removal was timely.

### 2. Commonality of Underlying Facts

The central question in Plaintiff's federal action is whether the underlying loans she obtained from Defendants are subject to TILA. This question turns on whether the underlying loans from Defendants were for a personal or business purpose. Plaintiff states the central issue in her state action is whether LB is qualified to do business in California and/or whether it failed to file a tax return under California law. (Motion to Remand at 12–13.) Plaintiff asserts that the federal action and state action have nothing to do with each other. (Id. at 14–15.) The Court agrees that the legal questions presented by these two actions are quite distinct. However, they arise out of the same set of factual circumstances and seek the same relief. Additionally, Defendants' contention that the state action is a manifestation of impermissible forum shopping cannot be ignored. Each action is carefully trimmed as to have as little overlap as possible, and the state action was filed after the Court initially denied Plaintiff's Initial Motion. Defendants state, and the Court agrees, that "both of the lawsuits involve the same underlying facts and the ultimate remedy Plaintiff is seeking is the same in both actions." (Remand Opposition at 8.) In the state court action, "Plaintiff asserts there should be a 'Cancellation and Expungement of Instruments,' namely the 'Deed of Trust,' 'Notice of Default,' and 'Notice of Trustee Sale' . . . Plaintiff's end goal in the State Court Action, like the Federal Action, is to halt the Trustee Sale on the Property." (Id. at 7.) Plaintiff's argument that LB is not licensed to do business in California stems from the same set of operative facts as her federal action. Accordingly, the Court will not remand the state action based on a lack of commonality of underlying facts.

### 3. Novel Issues of State Law

Plaintiff's final argument in favor of remand centers on whether her state action raises potentially novel or complex issues of state law. Under Cal. Corp. Code § 17708.07(a), "[a] foreign limited liability company transacting intrastate business in this state shall not maintain an action or proceeding in this state unless it has a certificate of registration to transact intrastate business in this state." Defendants concede they were not registered to conduct business in California when Plaintiff obtained her loan, but state they are now registered to do business and have sought relief from the voidability sections of the Revenue and Tax Code. (Sur-Reply at 8 (citing Rev. & Tax Code § 23305.1(c)).) Larissa Branes filed a declaration in support of LB's Sur-Reply. ("Branes Declaration," Dkt. No. 93.) She declares LB has confirmed with the California Franchise Tax Board ("FTB") and that "LB Lending, LLC is in good standing and that the contract voidability provisions of the Revenue and Taxation Code do not apply in this situation." (Id. at 3–4.) Additionally, LB inquired as to whether it needed to submit an application for relief from contract voidability, but was told by the FTB that such an application was unnecessary. (Id.) LB submitted verification that it is now currently in good standing with the FTB and duly licensed to do business in California as of January 3, 2018. (Dkt. No. 93, Exh.

B.) These assertions contradict the premise of Plaintiff's argument. Plaintiff believes there will be an argument as to whether Defendant can institute a non-judicial foreclosure while not being registered to do business. (Remand Reply at 8.) However, it appears the appropriate question going forward will be whether LB's status as a non-registered business entity is at all significant considering the statements of the FTB. Accordingly, Plaintiff's purported argument appears to be irrelevant, and as such does not raise a complex or novel issue of state law.

Having found that Plaintiff's state action was timely removed, shares the same operative facts as her federal action, and does not involve novel or complex issues of state law, the Court DENIES Plaintiff's Motion to Remand.

**C. Motion for Reconsideration**

Pursuant to the Local Rules, in order to seek reconsideration a party must show either "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." L.R. 7-18. A motion for reconsideration should not be granted, "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). A Court may relieve a party from a final order if there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. Pro. 60(b)(2). This newly discovered evidence must have sufficient significance that it would have likely affected the disposition of the case. Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 883 F.2d 208, 211 (9th Cir. 1987.)

In this case, the evidence at issue is a 2012 Loan Application which shows that Plaintiff originally applied for a loan for a residential, not a business, purpose. (Reconsideration Reply at 6.) Plaintiff states that, because of her own computer issues, the 2012 Loan Application "was simply not available." (Id. at 7.) Specifically, Plaintiff states that around April 2017, her laptop computer started slowing down and occasionally freezing. (Id.) However, as it was still functioning, Plaintiff did not feel an urgent need to replace it. (Id.) The computer's performance deteriorated over the next few months as the crashes and freezes occurred more frequently. (Id.) Plaintiff states she did not remember the existence of the 2012 Loan Application when she filed her lawsuit. (Id. at 8.) Additionally, she states she did not realize "documents were missing or inaccessible to her on her computer as a result of the computer issues." (Id.) On November 4, 2017, Plaintiff's computer crashed again, this time fatally. (Id. at 8.) This forced Plaintiff to buy a new computer, and when she did the in-store tech team salvaged some of Plaintiff's files from her old computer which had been "previously inaccessible, damaged, or unable to be opened due to her computer issues." (Id.) Plaintiff then began sifting through these previously inaccessible documents and discovered the existence of the 2012 Loan

Application.  (Id. at 8–9.)  Plaintiff has submitted a declaration and exhibits supporting these assertions.  (Dkt. No. 81-1.)

      In Opposition, Defendants argue "Plaintiff signed and submitted [the 2012 Loan Application] to Defendants herself, and admittedly saved a copy for herself, [therefore] Plaintiff cannot now claim to be ignorant of the Loan Application's existence."  (Sur-Reply at 3.)  Defendants acknowledge that Plaintiff's computer issues were only partial, as she had the ability to send emails, pay bills online, and access saved files.  (Id. at 4.)  Defendants weaponize this to show Plaintiff's computer was working appropriately before she filed her Initial Motion.  (Id. at 4–5.)  However, the central issue is whether Plaintiff knew her computer problems caused some documents to be inaccessible.  Plaintiff states she "did not realize that documents were missing or inaccessible . . . as a result of the computer issues" and there is no evidence to the contrary.  (Reconsideration Reply at 8.)  Accordingly, it was reasonable for Plaintiff to assume she had access to all of her relevant loan documents at the time of her Initial Motion and the Court will not fault her for this belief.

## IV.  CONCLUSION

      The Court finds that Plaintiff's state action was timely removed, shares the same operative facts as her federal action, and does not involve novel or complex issues of state law.  Accordingly, the Court DENIES Plaintiff's Motion to Remand.

      The Court finds that the 2012 Loan Application constitutes newly discovered evidence.  Accordingly, the Court GRANTS Plaintiff's Motion for Reconsideration.  Notably, the Court has already considered whether Plaintiff is entitled to a preliminary injunction if the 2012 Loan Application is considered.  (See December Order.)  Therefore, for the reasons outlined in the December Order, IT IS ORDERED that the above-named defendants, and each of them, and their officers, agents, employees, representatives, and all persons acting in concert or participating with them, are ENJOINED and RESTRAINED from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, any and all foreclosure proceedings against Plaintiff's residence located at 319 Westlake, Palm Springs, CA 92264 until further order from this Court.

      **IT IS SO ORDERED.**