UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 17-01580 JGB (SPx) | Date | July 20, 2018 |
|---|---|---|---|
| Title | *Amy Cox v. LB Lending, LLC, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order DENYING Defendants' Motion for Reconsideration of Preliminary Injunction, or in the Alternative, to Modify Preliminary Injunction (Dkt. No. 99)

On June 20, 2018, Defendants LB Lending, LLC and Macoy Capital Partners, Inc. (collectively, "Defendants") filed a Motion for Reconsideration of Preliminary Injunction, or in the Alternative, to Modify Preliminary Injunction. ("Motion," Dkt. No. 99.) On July 5, 2018, Plaintiff Amy Cox ("Plaintiff") filed an opposition.[1] ("Opposition," Dkt. No. 101.) Defendants filed a reply on July 9, 2018. ("Reply," Dkt. No. 103.) The Court took this matter under submission on July 19, 2018. (Dkt. No. 105.) The Court considers this matter appropriate for resolution without a hearing. See Fed. R. Civ. Pro. 78; L.R. 7-15. Upon consideration of the papers filed in support of and in opposition to this Motion, the Court DENIES Defendants' Motion and VACATES the hearing scheduled for July 23, 2018.

---

[1] This Motion was noticed for a hearing on July 23, 2018. Under Local Rule 7-9, a party must file opposition papers no later than 21 days before the date designated for the hearing of the motion. Accordingly, opposition papers were to be filed no later than July 2, 2018. Failure to comply with the local rules is proper grounds for dismissal. See Doster v. Beard, No. 1:15-cv-01415-DAD-GSA-PC, 2017 WL 4365712, at *1 (E.D. Cal. Sept. 29, 2017) (citation omitted) ("Thus, a court may dismiss an action for plaintiff's failure to oppose a motion to dismiss, where the applicable local rule determines that failure to oppose a motion will be deemed a waiver of opposition.") The Court will consider Plaintiff's untimely Opposition. However, untimely filings in the future may result in the imposition of sanctions.

# I. BACKGROUND

## A. Procedural History

The procedural and filing history of this case is complex. On August 4, 2017, Plaintiff filed a First Amended Complaint against Defendants. ("FAC," Dkt. No. 13.) The FAC alleged six causes of action: (1) violation of Federal Truth-in-Lending Act, 15 U.S.C. § 1601 ("TILA"); (2) violation California Business and Professions Code § 17200 for unfair business practices; (3) fraud; (4) breach of fiduciary duties; (5) negligence; and (6) slander of title. (FAC ¶¶ 52–108.) On October 15, 2017, Plaintiff filed her initial Motion for Preliminary Injunction. ("Initial Motion," Dkt. No. 17.) On November 16, 2017, the Court denied Plaintiff's Initial Motion. ("November 2017 Order," Dkt. No. 34.) On November 17, 2017, Plaintiff appealed the Court's decision to the Ninth Circuit. (Dkt. No. 35.) On November 30, 2017, Plaintiff filed a Motion for Preliminary Injunction Pending Appeal claiming she had discovered new evidence. ("MPIPA," Dkt. No. 45.) The Court Granted Plaintiff's MPIPA. ("December 2017 Order," Dkt. No. 55.) Plaintiff also filed a Second Amended Complaint on December 16, 2017. ("SAC," Dkt. No. 51.) The SAC contains the same six causes of action as the FAC, and adds a cause of action for rescission under TILA. (Id. ¶¶ 74–78.)

On February 22, 2018, the Ninth Circuit affirmed the Court's denial of Plaintiff's Initial Motion. (Dkt. No. 71.) As a result, Plaintiff filed a Motion for Reconsideration on February 23, 2018. (Dkt. No. 70.) On the same day, Plaintiff filed an ex parte application for a Temporary Restraining Order and requested the Court enjoin Defendants from continuing with foreclosure proceedings until the Court ruled on her Motion for Reconsideration. ("TRO Application," Dkt. No. 72.) The Court granted Plaintiff's TRO Application on March 5, 2018. (Dkt. No. 78.) The Court granted Plaintiff's Motion for Reconsideration on May 23, 2018. ("May 2018 Order," Dkt. No. 97.) As a result, Defendants filed this Motion.

## B. Factual History

### 1. Loan 1

According to the SAC, on or before February 2011, Plaintiff had taken out a loan with Jerome M. Covin, Trustee of the Covin Family Trust. ("Covin Loan," SAC ¶¶ 10–11.) The Covin Loan was set to expire on May 31, 2011. (Id. ¶ 11.) Defendant Macoy Capital Partners, Inc. ("Macoy") orchestrated an extension until May 31, 2013. (Id.) In July of 2012, Plaintiff asked Macoy to refinance the Covin Loan with a traditional 30-year fixed term. (Id. ¶ 12.) Macoy, however, arranged for a one-year loan with Defendant LB Lending in August of 2012. ("Loan 1," id. ¶ 13.) Defendants sent Plaintiff the Loan 1 documents two days before the October 5, 2012 closing date. (Id.) Prior to closing Loan 1, Plaintiff requested a 24-month term. (Id.) Defendants told Plaintiff she would have to refinance Loan 1 in 12 months. (Id.) Loan 1 was for $180,000 and secured by a deed of trust on Plaintiff's residence. (Id. ¶ 14.)

Plaintiff alleges Defendants knew or should have known the purpose of Loan 1 was to refinance the Covin Loan and for other personal reasons. (Id. ¶ 15.) Defendants never asked Plaintiff if Loan 1 was for a business purpose or requested information concerning a business purpose. (Id. ¶ 18.) Plaintiff alleges Defendants knew or should have known all of the proceeds of Loan 1 were going to be used in connection with Plaintiff's primary residence and other personal expenses. (Id. ¶ 19.)

In August 2013, Macoy orchestrated an extension of Loan 1's maturity date from August 31, 2013 to August 31, 2015. (Id. ¶ 20.) Macoy implemented this two-year extension despite Plaintiff again asking for a "traditional loan," such as a 30-year fixed rate loan. (Id.) Plaintiff did not learn she would not be getting a traditional home loan until the day before signing the loan documents. (Id. ¶ 27.) Plaintiff did not receive the extension documents until after the initial maturity date of August 31, 2013; consequently, Defendants backdated all of the Loan 1 extension documents. (Id. ¶ 21.) Macoy told Plaintiff to sign the documents immediately and return them via overnight mail, leaving Plaintiff under financial pressure to sign the extension. (Id.) During the process of Loan 1, Defendants provided Plaintiff with several loan documents, including a Deed of Trust With Assignment of Rents, Security Agreements and Fixture Filings. ("2013 Deed of Trust," id. ¶ 22.) The 2013 Deed of Trust secured Loan 1 using Plaintiff's principal residence. (Id. ¶ 23.) Plaintiff "made clear" to Defendants the property secured by Loan 1 was her principal residence. (Id.)

Loan 1 was for a principal amount of $180,000, initially for a term of 12 months at an annual interest rate of 8.5%, but later extended an additional 24 months at the same interest rate. (Id. ¶ 24.) Plaintiff was to make monthly interest-only payments, and a balloon payment of the principal balance would be due at the maturity date. (Id.) Loan 1 provided a default rate of 17.99%. (Id. ¶ 27.) The loan is more than 6.5 points above the federal Average Prime Rate Offer, and thus is a "high cost" loan governed by 15 C.F.R. § 1026.35 of Regulation Z.

2. **Loan 2**

Knowing that Loan 1 was set to mature in August 2015, Defendants informed Plaintiff that Defendant LB Lending would refinance Loan 1 with a new loan in June of 2015. ("Loan 2," id. ¶¶ 29–30.) Loan 2 would be for $270,000 and secured by a deed of trust on Plaintiff's residence. (Id. ¶ 30.) Plaintiff alleges Defendants knew or should have known that the purpose of Loan 2 was to refinance Loan 1 and for other personal purposes. (Id. ¶ 31.) Defendants never asked if Loan 2 was for a business purpose, or requested information concerning a business purpose. (Id. ¶ 33.) Plaintiff alleges Defendants knew or should have known that all of the proceeds of Loan 2 were going to be used in connection with Plaintiff's primary residence and other personal expenses. (Id. ¶ 34.)

Around the time of closing Loan 2 in June 2015, Plaintiff noticed the Loan 2 loan documents stated Loan 2 was for a business purpose. (Id. ¶ 35.) Plaintiff told Defendants she did not understand this language, as she intended to use Loan 2 to refinance Loan 1 and for personal

purposes.  (Id.)  Defendants responded by saying, "Don't worry about it; it's just language that we have to use."  (Id.)  Plaintiff relied upon Defendants' response and signed Loan 2.  (Id. ¶ 36.)

On August 26, 2015, well after closing on Loan 2 in June 2015, Defendants provided Plaintiff with a Borrower's Agreement to sign.  (Id. ¶ 38.)  The Borrower's Agreement stated Loan 2 was for an investment purpose.  (Id.)  When Plaintiff asked Defendants about this language, Defendants again told Plaintiff not to worry about it.  (Id.)  Relying on Defendants' response, Plaintiff signed and returned the document.  (Id.)  However, Plaintiff left all the areas in the forms that referenced the stated purpose of the business or investment blank.  (Id. ¶ 39.)  Defendants did not investigate this lack of information.  (Id.)

Defendants gave Plaintiff several loan documents, including a Deed of Trust with Assignment of Rents, Security Agreements and Fixture Filings, dated June 9, 2015.  ("2015 Deed of Trust," id. at 37.)  The 2015 Deed of Trust secured Loan 2 using Plaintiff's principal residence.  (Id. ¶ 40.)  As the proceeds of Loan 2 would pay off Loan 1, the 2015 Deed of trust released and replaced the 2013 Deed of Trust.  (Id. ¶¶ 40–41.)  Loan 2 was for $270,000, payable within 24 months at an annual interest rate of 8.5%.  (Id. ¶ 43.)  Plaintiff was to make monthly interest-only payments and a balloon payment of the principal balance on the maturity date.  (Id.)  Loan 2 provided for a default rate of 17%.  (Id.)

On June 7, 2017, Defendants sent a letter to Plaintiff saying she was in default.  (Id. ¶ 55.)  On June 16, 2017, Plaintiff sent a notice of rescission under TILA to Defendants and expressed a willingness to repay Defendants the amount Plaintiff would owe as a result of rescission.  (Id.)  Defendants have not yet released its security interest in Plaintiff's residence.  (Id.)

## II.   LEGAL STANDARD

As a general matter, motions for reconsideration are disfavored and are appropriate only if: (1) the movant presents newly discovered evidence; (2) the Court committed clear error or the initial decision was manifestly unjust; or (3) an intervening change in controlling law has occurred.  See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. AC & S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); L.R. 7-18.  Accordingly, a party should not file a motion to reconsider to ask a court "to rethink what the court had already thought through—rightly or wrongly."  Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).  In the Central District of California, reconsideration is only available when there is:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7-18.

### III.  DISCUSSION

Defendants argue reconsideration is warranted because in its May 2018 Order the Court did not address whether a bond should be issued to secure Defendants' interest in Plaintiff's property during the pendency of this litigation. (Motion at 7–8.) Alternatively, Defendants request the Court exercise its discretion to increase the security required by Plaintiff. (Id.)

To support their Motion, Defendants assert the following facts, supported by declaration: On June 9, 2015, Plaintiff obtained Loan 2 from Defendant LB Lending in the amount of $270,000.00, secured by a deed on Plaintiff's residence. ("Ohlbaum Declaration," Dkt. No. 99-1 ¶ 4.)  Loan 2 had an initial interest rate of 8.50% and a default interest rate of 17.00% ("Loan 2 Agreement"). (Id. ¶ 6, Exh. 2.)  Loan 2 was a twenty-four month loan in which Plaintiff was to make monthly interest-only payments of $1,912.50 until Loan 2 matured on June 9, 2017, at which time the entire balance became fully due. (Id. ¶ 8, Exh. 2.)  When Loan 2 fully matured, Plaintiff defaulted. (Id. ¶¶ 9–10.)  Plaintiff has not tendered her payment for April of 2017, and has been in post-maturity default for thirteen months. (Id. ¶ 10.)  A Notice of Default ("NOD") was recorded on August 2, 2017. (Id. ¶ 16, Exh. 4.)  The NOD reflects the total amount of arrears which had accrued as of July 26, 2017, which was $286,955.48. (Id.)  Plaintiff has not made a payment to Defendants on Loan 2 since March of 2017, and interest continues to accrue. (Id. ¶ 19.)  As of June 20, 2018, the balance of Loan 2 has increased to over $339,213.71. (Id. ¶ 20.)  Of that amount, $55,972.50 is accrued default interest since Plaintiff's last payment in April of 2017. (Id.)  Assuming this case goes to trial in June of 2019, the defaulted Loan 2 would have accrued $22,950.00 in interest at the initial 8.50% note rate, or $45,900.00 at the default rate of 17.00%. (Id.)  Additionally, Defendants state Plaintiff is likely to owe over $100,000.00 in attorneys' fees. (Motion at 3.)  Therefore, Defendants imply Plaintiff would owe a total amount of $462,163.71 at the normal rate of interest, or $485,113.71 at the default rate of interest. (Id.)  Plaintiff submitted an appraisal in April of 2017 which indicated the fair market value of Plaintiff's property was $441,000.00. (Ohlbaum Declaration, ¶ 21, Exh. 3.)  However, the fair market value of Plaintiff's property is declining because Loan 2 is in default. (Id. ¶ 22.)  With each passing month, the property declines in value and the balance of Loan 2 increases. (Id.)

District courts may modify injunctions on consideration of changed circumstances or new facts. A&M Records, Inc. v. Napster, Inc., 284 F.3d 1091, 1098 (9th Cir. 2002). Pursuant to the Federal Rules of Civil Procedure, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).  The Ninth Circuit has interpreted this rule as to provide district courts with "discretion as to the amount of security required, if any[.]" Language Line Servs., Inc. v. Language Servs. Assocs., Inc., 500 F. App'x 678, 681 (9th Cir. 2012).  However, district courts should give "a clear statement . . . concerning its reasons for requiring or not requiring a bond." Id.

Here, Defendants argue their interest is not protected and they will not be able to recover sufficient damages without a bond. (Motion at 6–7.)  In her Opposition, Plaintiff argues

Defendants should have raised the issue of a bond long ago. (Opposition at 4–5.) Additionally, Plaintiff argues Defendants have improperly included the potential award of attorneys' fees in their discussion of why a bond is appropriate. (Id. at 7.) Plaintiff notes Defendants have not provided any legal authority supporting this argument (id.), and Defendants do not respond to Plaintiff's argument in their Reply. Plaintiff also, by declaration, states she is currently unemployed and unable to afford a bond in this case. (Id. at 8–9; "Cox Declaration," Dkt. No. 101-1 ¶¶ 4–5.) If an award for attorneys' fees is not considered in this case, then Defendants' estimate of Plaintiff's future debt would decrease to approximately $362,163.71 at the normal rate of interest, or $385,113.71 at the default rate of interest. Notably, both of these figures are less than the current appraisal value of Plaintiff's residence. These facts, combined with Plaintiff's status as currently unemployed, lead to the conclusion that a bond here is unnecessary and would constitute a severe hardship upon Plaintiff. See Toussaint v. Rushen, 553 F. Supp. 1365, 1383 (N.D. Cal. 1983) ("Where, as here, suit is brought on behalf of poor persons, preliminary injunctive relief may be granted with no payment of security whatever."); see also McKinley v. CitiMortgage, Inc., No. 13-CV-1057 TLN-CKD, 2014 WL 651917, at *7 (E.D. Cal. Feb. 19, 2014) ("[G]iven Plaintiffs' current financial situation, they would be unable to pay the bond, and thus would be precluded from judicial review."). Accordingly, the Court declines to exercise its discretion to impose a bond and DENIES Defendants' Motion.

## IV. CONCLUSION

The Court DENIES Defendants' Motion.

**IT IS SO ORDERED.**